KENNETH B. ADOLPHSON *v.* ZONING BOARD OF APPEALS OF THE TOWN OF FAIRFIELD ET AL.
(13131)

PETERS, C. J., SHEA, CALLAHAN, GLASS and HULL, Js.

*(Two justices dissenting)*
Argued October 6, 1987—decision released January 5, 1988

*Linda M. Guliuzza,* for the appellant (plaintiff).

*Lorraine W. Osborne,* with whom, on the brief, was *Charles J. Willinger, Jr.,* for the appellees (defendants Michael A. Brunetto et al.).

*Roy H. Ervin,* with whom, on the brief, was *Roy H. Ervin, Jr.,* for the appellee (named defendant).

GLASS, J. The plaintiff, Kenneth B. Adolphson, appealed to the Superior Court pursuant to General Statutes § 8-8[1] as an aggrieved owner of property located within one hundred feet of a parcel of land owned by the defendants, Michael A. and Lori A. Brunetto (Brunettos). The plaintiff claims that the zoning board of appeals of the town of Fairfield (board) erred in granting the application of the Brunettos for three variances and a special exception to the Fairfield zoning regulations (regulations). The state trial referee, exercising the powers of the Superior Court, dismissed the appeal from the board and the plaintiff appealed to the Appellate Court. Thereafter, this court transferred the appeal to itself, pursuant to Practice Book § 4023.

The following unchallenged facts presented below are relevant to our consideration of the plaintiff's claims: The plaintiff is the owner of a parcel of land on which an industrial building is located at 1455 Kings Highway in Fairfield. The Brunettos' property is located at 1475 Kings Highway in Fairfield. Both properties are located in an industrial district 1 zone. The prior owners of the Brunettos' property used it for the operation of an aluminum casting foundry, a nonconforming use in an industrial district 1 zone. The foundry had been operated from 1953 until it had become economi-

---

[1] General Statutes § 8-8 provides in pertinent part: "APPEAL FROM BOARD TO COURT. REVIEW BY APPELLATE COURT. (a) Any person or persons severally or jointly aggrieved by any decision of said board, or any person owning land which abuts or is within a radius of one hundred feet of any portion of the land involved in any decision of said board, or any officer, department, board or bureau of any municipality, charged with the enforcement of any order, requirement or decision of said board, may, within fifteen days from the date when notice of such decision was published in a newspaper pursuant to the provisions of section 8-3 or 8-7, as the case may be, take an appeal to the superior court for the judicial district in which such municipality is located, which appeal shall be made returnable to said court in the same manner as that prescribed for civil actions brought to said court."

cally unfeasible. The Brunettos purchased the property in early April, 1985, with the intention of using it as an automobile repair shop. On April 8, 1985, the Brunettos filed an application with the board for three variances and a special exception. In granting the application, the board found that when the Brunettos purchased the property they did so with the knowledge that the operation of an automobile repair shop is prohibited by the regulations in an industrial district 1 zone.[2] Relying on the board's findings, the trial court concluded that "the proposed use for the subject property operating under current regulations as to air pollution and the like would be far less offensive to the surrounding residents than a foundry."

The gravamen of the plaintiff's challenge is that the trial court erred in upholding the board's granting of the Brunettos' application for a variance to § 19.4.6 of the regulations. Specifically, the plaintiff claims that the trial court erred in: (1) upholding the board's decision granting a variance of § 19.4.6 of the regulations when the board clearly usurped the function of the planning and zoning commission; (2) upholding the board's decision in granting the three variances when the Brunettos failed to show unusual hardship; (3) upholding the board's decision in granting the variances when such variances will substantially affect the comprehensive zoning plan; (4) holding that a denial of the Brunettos' application for three variances would be con-

---

[2] The pertinent regulation prohibiting an automobile repair shop in an industrial district 1 zone is as follows:

"[Fairfield Zoning Regs.] 19.4. PROHIBITED USES. The permitted uses specified in paragraph 19.2 shall not be construed to include the following uses, and no land, building or other structure shall be used for any of the following purposes . . . 19.4.6. Gasoline filling stations; automobile repair garages including automobile, trailer and farm equipment repairing, painting and upholstering except when clearly accessory and subsidiary to a permitted use on the same premises; establishments for motor vehicle washing; establishments for the sale of new or used automobiles, trucks, trailers or farm equipment."

fiscatory and legally impermissible; and (5) holding that adherence to the strict letter of the regulation would cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. We find no error.

I

The plaintiff's first claim is that the trial court erred in upholding the board's decision granting a variance of § 19.4.6 of the regulations. The plaintiff argues that the board usurped the function of the planning and zoning commission by allowing the Brunettos to change the use of their property to a use specifically prohibited in an industrial district 1 zone. We disagree.

At the outset, we note that "[u]pon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons . . . . We, in turn, review the action of the trial court." *Willard* v. *Zoning Board of Appeals,* 152 Conn. 247, 248–49, 206 A.2d 110 (1964). "The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs. *Horvath* v. *Zoning Board of Appeals,* 163 Conn. 609, 316 A.2d 418 (1972); *Thorne* v. *Zoning Board of Appeals,* 156 Conn. 619, 621, 238 A.2d 400 (1968); *Talmadge* v. *Zoning Board of Appeals,* 141 Conn. 639, 642, 109 A.2d 253 (1954)." *Whittaker* v. *Zoning Board of Appeals,* 179 Conn. 650, 654, 427 A.2d 1346 (1980).

The plaintiff asserts that variances "should not be used to accomplish what is, in effect, a substantial change in the uses permitted in the specified zone." *Dooley* v. *Town Planning & Zoning Commission,* 151 Conn. 304, 313, 197 A.2d 770 (1964). He claims further that "the establishment of and changes in general zoning regulations are a legislative function . . . and when the board uses its variance power to change these general rules, it encroaches on this legislative area and

thereby acts in abuse of its discretion." *Ward* v. *Zoning Board of Appeals,* 153 Conn. 141, 145, 215 A.2d 104 (1965). In support of this argument the plaintiff relies on *Heady* v. *Zoning Board of Appeals,* 139 Conn. 463, 94 A.2d 789 (1953),[3] and *Bradley* v. *Zoning Board of Appeals,* 165 Conn. 389, 334 A.2d 914 (1973).[4] *Heady* is clearly distinguishable from this case. In *Heady,* the applicant had a permissible accessory use that he attempted to change and expand by variance to a nonconforming use. The Brunettos, by contrast, have a nonconforming use that they seek to change to a "less offensive" nonconforming use. Neither *Heady* nor *Bradley* supports the argument of the plaintiff because in both of those cases the applicant sought to increase his land use by way of the variance power of the board, as contrasted to the Brunettos who have a nonconforming use of their property and, by way of a variance, applied for a change in the nonconforming use to a "less offensive" nonconforming use.

---

[3] In *Heady* v. *Zoning Board of Appeals,* 139 Conn. 463, 94 A.2d 789 (1953), the defendant and the plaintiff were individual owners of properties in a residential zone, restricted to single-family dwellings. The defendant, a physician, maintained his office on his property. Such use was permitted as an accessory use under the regulations. The defendant sought and was granted a variance to permit an additional medical and dental office on his property. The defendant had not resided on the property for approximately two years prior to applying for a variance. On appeal to the trial court the action of the board was determined to be illegal, arbitrary and an abuse of its discretion. We upheld the trial court, and in doing so, stated: "The defendant seeks, by means of a variance, to change the use of his property completely. It is to be no longer the home of a doctor in which he maintains his office and from which he conducts his practice. It is to become a small professional office building." Id., 467.

[4] In *Bradley* v. *Zoning Board of Appeals,* 165 Conn. 389, 334 A.2d 914 (1973), the zoning board of appeals granted a variance for the construction of a multiple family apartment building in an area zoned for single-family dwellings. The trial court upheld the action of the board, and this court reversed. "Variances 'should not be used to accomplish what is, in effect, a substantial change in the uses permitted in a specific zone. The power to accomplish such a result is in the zoning commission.' " Id., 395.

Under General Statutes § 8-6 (3),[5] the board may grant a variance provided (1) the variance is shown not to affect substantially the comprehensive zoning plan, and (2) adherence to the strict letter of the zoning regulation is shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. *Whittaker* v. *Zoning Board of Appeals*, supra, 655; *Smith* v. *Zoning Board of Appeals*, 174 Conn. 323, 326, 387 A.2d 542 (1978). The trial court concluded that the decision of the board satisfied these statutory variance requirements. As Professor Tondro states, "[t]he [zoning board of appeals] is best known for its power to alter the application of the zoning regulations to a particular property upon a proper showing by the applicant. No municipal agency other than the board of appeals may be given the power to vary the application of the zoning regulations in individual cases." T. Tondro, Connecticut Land Use Regulation (1979) § III-D (1), pp. 46–47. Here, the board granted a variance to the Brunettos for a single parcel of land which is a lot consisting of fifty by one hundred feet, occupied by a building of forty by eighty feet. In granting a variance to the Brunettos for this particular lot, the board has not, in our view, used its variance power to establish or change the general zoning regulations of Fairfield.

---

[5] General Statutes § 8-6 (3) provides: "POWERS AND DUTIES OF BOARD OF APPEALS. The zoning board of appeals shall have the following powers and duties . . . (3) to determine and vary the application of the zoning bylaws, ordinances or regulations in harmony with their general purpose and intent and with due consideration for conserving the public health, safety, convenience, welfare and property values solely with respect to a parcel of land where, owing to conditions especially affecting such parcel but not affecting generally the district in which it is situated, a literal enforcement of such bylaws, ordinances or regulations would result in exceptional difficulty or unusual hardship so that substantial justice will be done and the public safety and welfare secured, provided that the zoning regulations may specify the extent to which uses shall not be permitted by variance in districts in which such uses are not otherwise allowed."

We recognize that "nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit — '[i]n no case should they be allowed to increase.' *Salerni* v. *Scheuy,* 140 Conn. 566, 570, 102 A.2d 528 [1954]; *Stern* v. *Zoning Board of Appeals,* 140 Conn. 241, 244, 99 A.2d 130 [1953]." *Beerwort* v. *Zoning Board of Appeals,* 144 Conn. 731, 734, 137 A.2d 756 (1958). "The accepted method of accomplishing the ultimate object is that, while the alien use is permitted to continue until some change is made or contemplated, thereupon, so far as is expedient, advantage is taken of this fact to compel a lessening or suppression of the nonconformity." *Darien* v. *Webb,* 115 Conn. 581, 585, 162 A.2d 690 (1932); *Lathrop* v. *Norwich,* 111 Conn. 616, 623, 151 A.2d 183 (1930). We reiterate the unchallenged finding of the trial court that "the proposed use for the subject property operating under current regulations as to air pollution and the like would be far less offensive to the surrounding residents than a Foundry."

"A property owner may legally engage in a prohibited use under either of two dispensations. He may obtain a variance, or his use may qualify as a nonconformity." T. Tondro, supra, § III-E (4), p. 70. A nonconformity is a use or structure prohibited by the zoning regulations but is permitted because of its existence at the time that the regulations are adopted. Id. On the other hand, a variance is a prohibited use or structure that is permitted by the board, pursuant to its authority under the regulations. Id. The variance power exists to permit what is prohibited in a particular zone. Thus, the board's action in this case, granting the Brunettos permission to operate an automobile repair shop, a prohibited activity in an industrial district 1 zone, is consistent with the board's variance power; see General Statutes § 8-6 (3); and does not constitute a usurpation of the function of the planning and zoning commission.

## II

The unusual hardship requirement for a variance is challenged by the plaintiff in his second and fifth claims. Under General Statutes § 8-6 (3) one of the requirements for a variance is evidence that adherence to the strict letter of the zoning regulation is shown to cause unusual hardship unnecessary to the carrying out of the general purpose of the zoning plan. *Smith* v. *Zoning Board of Appeals,* supra, 326. The plaintiff argues that the Brunettos' hardship is self-inflicted. He asserts that in Connecticut it is "well established that self-inflicted hardship which arises because of individual actions by the applicant will not provide a zoning board of appeals with sufficient reason to grant a variance." *Garibaldi* v. *Zoning Board of Appeals,* 163 Conn. 235, 238, 303 A.2d 743 (1972). In support of his claim the plaintiff relies principally on *Highland Park, Inc.* v. *Zoning Board of Appeals,* 155 Conn. 40, 229 A.2d 356 (1967),[6] and *Devaney* v. *Board of Zoning Appeals,* 132 Conn. 537, 45 A.2d 828 (1946).[7] Although the trial court found that the Brunettos purchased the subject

[6] In *Highland Park, Inc.* v. *Zoning Board of Appeals,* 155 Conn. 40, 229 A.2d 356 (1967), the corporation constructed a house in violation of the North Haven zoning regulations and thereafter sought a variance. It was disclosed that the position of the house on the lot resulting in the violation was due to an error of either the surveyor or of the foundation contractor employed by the corporation. The variance was denied by the board, and we upheld that decision, holding that the hardship suffered by the corporation was due to its own building error or the error of those employed by the corporation, and was self-inflicted. Id., 43.

[7] In *Devaney* v. *Board of Zoning Appeals,* 132 Conn. 537, 45 A.2d 828 (1946), the applicant purchased a one family dwelling intending to use the first floor as a restaurant and to live with his family on the second floor. The property was in a residential zone, where a restaurant business was prohibited. The applicant was aware of the zoning regulations when he purchased the property and later sought a building permit to alter the first floor and adopt it for a restaurant. The permit was denied, but on appeal to the zoning board of appeals the application was granted. The trial court revoked the permit and this court found no error.

property with the knowledge that the operation of an automobile repair shop was prohibited in an industrial district 1 zone, we conclude that these cases are inapposite.

The Brunettos purchased the subject property with an existing nonconformity. They did not create the nonconformity, which arises solely out of the regulations and not out of their purchase of the property. While the applicants in *Highland Park, Inc.*, and *Devaney* sought to obtain a nonconforming use by way of a variance, the Brunettos, however, seek to change an established nonconforming use to a less offensive nonconforming use. The purchase of the foundry, a nonconforming use, with knowledge that an automobile repair shop is prohibited in an industrial district 1 zone does not militate against the Brunettos' use variance application.

We have stated that "[t]here has always existed a distinction between circumstances such as those in [*Abel* v. *Zoning Board of Appeals*, 172 Conn. 286, 374 A.2d 227 (1977)], where the applicant or his predecessor in interest creates a hardship such as an undersized lot, and a situation where the hardship which would justify the grant of a variance originates in the zoning ordinance itself. 'Where a nonconformity exists, it is a vested right which adheres to the land itself. "And the right is not forfeited by a purchaser who takes with knowledge of the regulations which are inconsistent with the existing use." 1 Anderson, American Law of Zoning (2d Ed.) § 6.37, p. 445.' *Petruzzi* v. *Zoning Board of Appeals*, 176 Conn. 479, 483, 408 A.2d 243 (1979). Where the applicant or his predecessor creates a nonconformity, the board lacks power to grant a variance. *Abel* v. *Zoning Board of Appeals*, supra; *Garibaldi* v. *Zoning Board of Appeals*, 163 Conn. 235, 239, 303 A.2d 743 (1972); *Highland Park, Inc.* v. *Zoning Board of Appeals*, [supra, 43]. But if the hardship is created

by the enactment of a zoning ordinance and the owner of the parcel could have sought a variance, then the purchaser has the same right to seek a variance and, if his request is supported in law, to obtain the variance. *Petruzzi* v. *Zoning Board of Appeals,* supra. Otherwise the zoning ordinance could be unjust and confiscatory." *Johnny Cake, Inc.* v. *Zoning Board of Appeals,* 180 Conn. 296, 300–301, 429 A.2d 883 (1980).

### III

Next, the plaintiff claims that the trial court erred in upholding the board's decision in granting the variances when such variances will substantially affect the comprehensive zoning plan. Initially we observe that the Brunettos already have a nonconforming use of their property, namely, the right to operate an aluminum foundry that would otherwise be prohibited in an industrial district 1 zone. Under General Statutes § 8-2, a continuation of the use of the property as a foundry cannot be prohibited. Also, in considering the first statutory requirement of a variance, we have stated: "The comprehensive plan is to be found in the scheme of the zoning regulations themselves." *Whittaker* v. *Zoning Board of Appeals,* supra, 656. Accordingly, along with the foundry that cannot be prohibited there are many other permitted activities that are specified in § 19.2 of the regulations.[8] It is significant that the

---

[8] Examples of permitted activities under § 19.2 of the Fairfield zoning regulations are as follows: "The manufacture, processing or assembling of goods . . . warehousing, wholesale businesses, common carrier, contract carrier or other freight and materials trucking businesses and terminals; motor vehicle rental or leasing businesses; and building contractors' businesses and storage yards . . . Storage and other buildings and structures where goods are sold or service is rendered primarily at retail . . . Laundering or cleaning plants . . . Undertakers' establishments, veterinary hospitals, printing and publishing establishments, bowling alleys and billiard and pool halls . . . ." Other permitted activities are restaurant establishments, including establishments where customers are served in motor vehicles or served primarily at food take-out counters. Additionally,

trial court found that the automobile repair shop is "less offensive" than the existing casting foundry, and did not find that it will adversely affect the property values in the industrial district 1 zone. Considering the wide variety of activities permitted in an industrial district 1 zone, we are not persuaded that in granting the Brunettos a variance to use their property as an automobile repair shop, the board has permitted a use that is not in harmony with the permitted property uses in an industrial district 1 zone, and, consequently, not in accordance with the zoning regulations' comprehensive plan. The burden is on the plaintiff to show that the board acted improperly. Like the trial court, we conclude that the plaintiff has not carried this burden.

## IV

Next, the plaintiff claims that the trial court erred in holding that a denial of the Brunettos' application for the variances would be confiscatory and legally impermissible. The trial court stated that "a rigid application of the Zoning Regulations to the subject property . . . would very likely cause the subject property to be useless. The Court would further hold that to deny the application of the owners would be confiscatory, and obviously that is legally impermissible." The plaintiff challenges this statement and in support of his argument he relies primarily on *State National Bank* v. *Planning & Zoning Commission,* 156 Conn. 99, 239 A.2d 528 (1968). *State National Bank* is distinguishable, however, because the State National Bank's application was to the planning and zoning commission of the town of Trumbull, while the Brunettos' application was to the zoning board of appeals. We have stated that it is the function of the zoning commission to frame the zoning regulations so as to provide areas in which

at the time of the public hearing before the board, in the building on the plaintiff's property were three tenants, a metal treating shop, a small manufacturing operation and an engineer.

property may be devoted to such uses as the town needs. It is the responsibility of the zoning commission to protect the welfare of the town as a whole. It is the function of the zoning board of appeals on the other hand to protect the interests of the individual land-owner by granting a variance when the regulations impose on him a hardship of the nature described in the statute. *Service Realty Corporation* v. *Planning & Zoning Board of Appeals,* 141 Conn. 632, 635, 109 A.2d 256 (1954); *Plumb* v. *Board of Zoning Appeals,* 141 Conn. 595, 600, 108 A.2d 899 (1954). Furthermore, in *State National Bank* the applicant was seeking to change a piece of property from its classification as residential to a commercial zone classification, while the Brunettos seek to change a lot from a nonconforming use in an industrial district 1 zone to another nonconforming use in an industrial district 1 zone. Finally, the size of the parcel of land in *State National Bank* was three and one-sixth acres while the size of the Brunettos' property is a fifty by one hundred foot lot.

We recognize that § 19.2 of the regulations sets forth a list of uses that are permitted in an industrial district 1 zone. The permitted uses require off-street parking in accordance with the provisions of § 28 of the regulations, which requires that for all off-street parking spaces there must be available land space for the approach, turning and exit of automobiles. It is significant that under § 28.8 of the regulations there are three permitted uses exempt from the off-street parking requirement. These exceptions are gasoline filling stations, dwellings and automobile repair garages. In any of the use exemptions a variance would be required. The Brunettos elected to apply for a use variance to change the nonconforming use of their property from a casting foundry to an automobile repair shop. In the exercise of its wide discretion, the board approved the Brunettos' application. In reviewing the action of the

board, the trial court found that a rigid application of the regulations to the Brunettos' property would very likely cause the property to be useless, and to deny their application would be confiscatory. Considering the size of the Brunettos' lot, the off-street parking requirement and the limited number of exemptions from the regulations, we are unable to conclude that the record does not support the trial court's finding.

V

Finally, the plaintiff invokes § 2.5.3 of the regulations[9] to challenge the action of the board in granting the Brunettos' property variance. This claim was first presented by the plaintiff in his reply brief on this appeal. In pursuing this claim the plaintiff seeks to have this court consider a matter that was not presented to the board or to the trial court. "Only in the most exceptional circumstances will this court consider a claim that was not raised in the trial court. Practice Book § [4185]; *Mazur* v. *Blum,* 184 Conn. 116, 120, 441 A.2d 65 (1981); *State* v. *Burke,* 182 Conn. 330, 331, 438 A.2d 93 (1980); *State* v. *Evans,* 165 Conn 61, 69, 327 A.2d 576 (1973). Such exceptional circumstances may occur where a new and unforeseen constitutional right has arisen between the time of trial and appeal or where the record supports a claim that a litigant has been deprived of a fundamental constitutional right and a fair trial. *State* v. *Williams,* 182 Conn. 262, 267, 438 A.2d 80 (1980); *State* v. *Evans,* supra. An exception may also be made where consideration of the question is in the interest of the public welfare or of justice between the parties. *Capozzi* v. *Luciano,* 174 Conn. 170, 175, 384 A.2d 359 (1978) [*Speziale, J.,* dissenting]; *Kavanewsky* v. *Zoning Board of Appeals,* 160 Conn. 397, 401, 279

_____

[9] Section 2.5.3 of the Fairfield zoning regulations provides: "No nonconforming use of land, buildings and other structures shall be changed to another use unless such new use is substantially the same in nature and purpose as the original nonconforming use or is a conforming use."

A.2d 567 (1971)." *Cahill* v. *Board of Education,* 187 Conn. 94, 99–100, 444 A.2d 907 (1982). None of the circumstances stated appear in this case. Accordingly, we decline to review this claim.

There is no error.

In this opinion PETERS, C. J., and HULL, J., concurred.

SHEA, J., with whom CALLAHAN, J., joins, dissenting. I disagree with the conclusions of the majority (1) that the variance granted to the Brunettos allowing their nonconforming use to be changed to a different nonconforming use does not substantially affect the comprehensive zoning plan of the town of Fairfield, and (2) that the showing of unusual hardship was sufficient not only to support the variance but to require it to have been granted in order to avoid confiscation of the Brunettos' property. More significantly, I disagree with two novel propositions implicitly advanced by the majority in support of its conclusions: (1) that a change in a nonconforming use otherwise violative of the comprehensive plan may be permitted by way of a variance, so long as the new use is less offensive than the former use; and (2) that where a nonconforming use becomes no longer economically viable because of changed conditions, a refusal to allow the use to be changed to a different nonconforming use constitutes an unconstitutional taking of property.

I

Unlike many zoning ordinances that permit in an industrial zone virtually all uses of property that may be conducted in a business zone, the Fairfield ordinance prohibits automobile repair garages in an industrial zone, although they are permitted in a business zone. The design of the ordinance to achieve a more complete separation of industrial and business uses has not been

challenged. The Fairfield ordinance also, unlike some others that may permit changes in nonconforming uses to other less objectionable nonconforming uses, contains a provision, § 2.5.3 of the Fairfield zoning regulations, expressly prohibiting any change in a nonconforming use "unless such new use is substantially the same in nature and purpose as the original nonconforming use or is a conforming use."[1] As more fully elaborated later, a change from an aluminum foundry to an automobile body repair shop violates this provision. The majority opinion, nevertheless, chooses to ignore this fundamental aspect of the comprehensive plan on the ground that this provision of the ordinance was never raised in the trial court.

This court has often exercised our authority under the "plain error" principle to consider a matter of substantial public interest that has been overlooked in the trial court. Practice Book § 4185; *Kavanewsky* v. *Zoning Board of Appeals,* 160 Conn. 397, 401, 279 A.2d 567 (1971). The interest of the public in adherence to the zoning regulations is undeniably at stake in this appeal. It is also well established that, where a pertinent statute has not been raised in the trial court, this court, nevertheless, will consider it on appeal. *State* v. *Burke,* 182 Conn. 330, 332, 438 A.2d 93 (1980); *Campbell* v. *Rockefeller,* 134 Conn. 585, 588, 59 A.2d 524 (1948). The failure to bring to the attention of the trial court the provisions of a special act has been treated similarly. *Stevens* v. *Neligon,* 116 Conn. 307, 311, 164 A. 661 (1933). Especially in view of the public interest involved, I see no good reason for refusing to apply to a zoning ordinance this exception to the general prohibition against consideration of new issues on appeal.

---

[1] Section 2.5.3 of the Fairfield zoning regulations provides: "No nonconforming use of land, buildings and other structures shall be changed to another use unless such new use is substantially the same in nature and purpose as the original nonconforming use or is a conforming use."

Section 2.5.3 articulates a general principle of zoning law that has been developed in regard to nonconforming uses apart from any such specific provision. "As a general rule, a nonconforming use that exists at the time a zoning ordinance is enacted cannot be changed into a significantly different kind of nonconforming use. Thus, unless the ordinance provides otherwise, a nonconforming use cannot be changed if it is substantially or entirely different from the original use." 6 P. Rohan, Zoning and Land Use Controls § 41.03 [2] (a). The majority opinion recognizes this principle in the quotations taken from *Beerwort* v. *Zoning Board of Appeals,* 144 Conn. 731, 734, 137 A.2d 756 (1958), and *Darien* v. *Webb,* 115 Conn. 581, 585, 162 A. 690 (1932). The conclusion reached in the opinion that the variances granted do not substantially affect the comprehensive plan, however, does not take into account that it is "the indisputable goal of zoning to reduce nonconforming to conforming uses with all the speed justice will tolerate." *Blum* v. *Lisbon Leasing Corporation,* 173 Conn. 175, 181, 377 A.2d 280 (1977). Since § 2.5.3 merely implements this principle, it necessarily should be considered in deciding whether the variances granted will adversely affect the comprehensive plan.

If consideration of § 2.5.3 is undertaken, it is clear that it prohibits the proposed change in the Brunettos' nonconforming use. This provision makes no exception for changes that may be less offensive than an existing nonconforming use, but requires that any new use be "substantially the same in nature and purpose as the original nonconforming use or [be] a conforming use." The change from an aluminum foundry to an automobile repair shop does not comply with this requirement. The authority of the zoning board of appeals to grant variances that do not conflict with the comprehensive zoning plan could not have been properly exercised in this instance, because its action under-

mines a significant objective of zoning, the ultimate termination of nonconforming uses. See 4 A. Rathkopf, Law of Zoning and Planning § 51.06 [1]. The constitutional right to continue an existing nonconforming use after a zoning regulation becomes effective does not include the right to make a substantial change in such use. 4 A. Rathkopf, supra.

## II

The majority opinion has gone further than necessary in upholding in part IV the finding of the trial court that a denial of the Brunettos' application would have been "confiscatory and legally impermissible." Such a finding was not essential in order to satisfy the requirement of "unusual hardship" for a variance, because a zoning board of appeals is not restricted to providing relief only in situations where enforcement of the regulations would create a hardship sufficient to constitute an unconstitutional taking. The opinion thus fails to adhere to our standard policy of resolving constitutional claims only when essential to a determination of the appeal. *State* v. *Zach,* 198 Conn. 168, 177, 502 A.2d 896 (1985); *State* v. *Madera,* 198 Conn. 92, 105, 503 A.2d 136 (1985). "The best teaching of this Court's experience admonishes us not to entertain constitutional questions in advance of the strictest necessity." *Parker* v. *County of Los Angeles,* 338 U.S. 327, 333, 70 S. Ct. 161, 94 L. Ed. 144 (1949).

In addressing this obiter dictum upon constitutional law, I disagree with the majority opinion that failure to have granted the Brunettos' application would have been confiscatory. The implication of that holding is that whenever a nonconforming use of property becomes economically unfeasible the owner must be permitted to change its use to any other nonconforming use that is no more offensive than the original use. How this position can be reconciled with the well accepted view that the eventual elimination of noncon-

forming uses is a proper zoning objective the majority opinion does not explain. Moreover, this holding appears to invalidate, without addressing its provisions, § 2.5.3, which precludes any change in a nonconforming use "unless such new use is substantially the same in nature and purpose as the original nonconforming use or is a conforming use."

With respect to the evidence of hardship relied upon by the majority, it is undisputed that there are many conforming uses permitted in an industrial zone for which the Brunettos' property, despite the limited parking space, might well have been adapted. Some of these uses are: the manufacture, processing or assembling of goods; office buildings and research laboratories; warehousing; wholesale businesses; selling goods or services at retail; laundering or cleaning plants; and restaurants and other food service establishments.[2] The majority opinion eschews the possibility of using the property for any of these conforming purposes, because this property does rot have sufficient area to satisfy the off-street parking requirements of § 28 of the Fair-

[2] Section 19.2 of the Fairfield zoning regulations provides in part: "PERMITTED USES. Subject to the performance standards specified in paragraph 19.3, land, buildings and other structures shall be used for one or more of the following purposes:

"19.2.1. The manufacture, processing or assembling of goods.

"19.2.2. Office buildings and research laboratories.

"19.2.3. Warehousing; wholesale businesses; common carrier, contract carrier or other freight and materials trucking businesses and terminals; motor vehicle rental or leasing businesses; and building contractors' businesses and storage yards.

"19.2.4. Storage and other buildings and structures where goods are sold or service is rendered primarily at retail.

"19.2.5. Business and professional offices, financial institutions and medical and dental clinics.

"19.2.6. Laundering or cleaning plants.

"19.2.7. Undertakers' establishments, veterinary hospitals, printing and publishing establishments, bowling alleys and billiard and pool halls.

"19.2.8. Restaurants and other food service establishments where customers are served only when seated at tables or counters and at least three-quarters of the customer seats are located within an enclosed building."

field zoning regulations. These parking regulations, however, could not restrict the conduct of the nonconforming aluminum foundry business in respect to parking cars on the property in the manner followed prior to their advent, because they apply only to "any permitted use of premises hereafter established."[3] Fairfield Zoning Regs. § 28.1 (1977). When a nonconforming use is changed, the regulations provide only that any *"additional* off-street parking and loading spaces" must comply with the off-street parking regulations. (Emphasis added.) Fairfield Zoning Regs. § 28.1 (1977). There is nothing in the record to indicate that no business permitted by the regulations could have been conducted on the property without providing more parking or loading space than had been available when the aluminum foundry business was operating. It appears that the variance of the off-street parking requirement obtained by the Brunettos in conjunction with the variance to permit the new nonconforming auto body shop use, allowing them to park six cars inside the building, could have been granted as readily if one of the conforming uses had been proposed for the property.

Accordingly, I dissent.

---

[3] Section 28.1 of the Fairfield zoning regulations provides: "GENERAL. For any permitted use of premises hereafter established, parking spaces and loading spaces shall be provided off the street for any use of land, buildings, and other structures in accordance with the standards hereinafter specified. Any use already existing shall conform to these standards to the extent that it conforms at the time of adoption of these regulations. Off-street parking and loading spaces required by this section shall be permanently maintained and made available for occupancy in connection with and for the full duration of the use of land, buildings and other structures for which such spaces are herein required. If any existing use of land, buildings or other structures is changed to a use requiring additional off-street parking and loading spaces to comply with this section, the additional spaces shall be provided for the new use in accordance with the standards hereinafter specified. Any existing use which does not conform to the standards of this section shall not be changed to a use which would need additional off-street parking and loading spaces to comply with the standards herein unless off-street parking and loading spaces are provided for such new use as required by this section."