[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION.
The plaintiff, Leonard J. Massello, appeals pursuant to Sect.8-8 of the General Statutes, from the decision of the defendant Zoning Commission of the City of Norwalk (the "Commission") granting the defendant Sono Harbor Associates Limited Partnership (hereinafter CT Page 5029 "Sono") a special permit and approval of its coastal area management ("CAM") site plan application to build two stories onto its existing building.
On or about May 19, 1989, the defendant Sono, through its agent Christopher W. Gaertner, applied to the Commission for a site plan review and special permit. (Return of Record ("ROR") Nos. 19, 20). The defendant sought to add a two-story, 10,000 square foot addition to his property on 140 Water Street.
The Commission mailed the plaintiff a notice that the general public hearing regarding the application would be held on July 19, 1989. (ROR No. 8, see attachment). Furthermore, the notice of the public hearing was publicized in a local paper (ROR Nos. 1, 14). The notice advised the plaintiff that the defendant Sono's agent had "applied for a site plan review application for property located at 140 Water Street . . . proposal is for the addition of two stories, 10,000 sq. ft. to the existing office use . . . application is on file in the Planning and Zoning offices in Norwalk City Hall, 125 East Avenue, Norwalk, CT 06851." (ROR No. 8, see attachment). The plaintiff's attorney attended the July 19, 1989 public hearing but did not object to the hearing, due to lack of notice regarding the special permit application, until August 15, 1989. (ROR No. 8).
Connecticut General Statutes Sec. 8-3c and Sec. 118-1450 of the Norwalk Zoning Regulations authorize the Commission to grant applications for site plan reviews and special permits. On July 19, 1989 the Commission approved the defendant's applications. The Commission's decision was published in The Hour, a daily Norwalk newspaper, on August 24, 1989 and took effect on August 25, 1989. (ROR Nos. 13, 15).
The plaintiff, pursuant to CGS Sec. 8-8, appealed the Commission's decision to the superior court in the judicial district of Stamford/Norwalk at Stamford. On May 30, 1989, a sheriff properly served the appeal on the defendants. Therefore, the appeal is timely. (See Conn. Pub. Acts No. 90-286, Secs. 1, 3, 9 [1990] [pending appeals to be considered timely if service of process occurred within 15 days after notice of the decision was published]).
On October 16, 1989 the defendant filed a Return of Record dated October 11, 1989. On April 9, 1990 the defendant filed its first supplemental ROR dated April 6, 1990. (ROR Nos. 19-20: Copy of Special Permit Application and Coastal Area Management Application both dated May 19, 1989). Then the defendant filed another supplemental ROR on July 30, 1990. (ROR No. 21: Copy of Traffic Report by I. K. Chann Associates, dated May 22, 1989). On February 26, 1991 the defendant filed its last supplemental ROR, February 26, 1991 the defendant filed its last supplemental ROR, dated February 25, 1991, in which it incorrectly numbered the CT Page 5030 exhibits. The exhibits are (1) a copy of "Proposed Drainage Site Plans" dated June 6, 1989 (labeled ROR No. 19 but should be ROR No. 22) and (2) a copy of plan entitled "Addition to 140 Water Street" (labeled ROR No. 20 but should be ROR no. 23). Defendant Sono filed its brief on July 26, 1990 and the Commission filed its brief on July 27, 1990.
Any person owning land which abuts, or is within a radius of one hundred feet of any portion of land that is the subject of a zoning board's decision is deemed statutorily aggrieved. Conn. Gen Stat. Sec. 8-8 (a) (rev'd to 1989). "Abutting landowners or landowners within a radius of one hundred feet of the land involved in any decision of a zoning board are considered automatically aggrieved and have standing to appeal a decision of a zoning board without having to prove aggrievement." Smith v. Planning Zoning Board, 203 Conn. 317, 321 (1987). "Unless the plaintiff alleges and proves aggrievement, his case must be dismissed." Fuller v. Planning Zoning Commission, 21 Conn. App. 340, (1990) (citation omitted).
The plaintiff alleges that he owns land located at 138 Water Street in the City of Norwalk which is located in the Marine Commercial Zone and abuts property located at 140 Water Street which is owned by defendant Sono. At the hearing on appeal, which was held on December 5, 1990, the plaintiff testified that he was the owner of property at 138 Water Street. Therefore, the plaintiff is statutorily aggrieved in accordance with CGS Sec. 8-8, and said aggrievement confers subject matter jurisdiction upon the court.
"The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 707 (1988) (citations omitted). A "party challenging the action of a planning and zoning commission bears the burden of proving that the commission acted arbitrarily or illegally." Blaker v, Planning Zoning Commission, 212 Conn. 471, 478 (1989). "Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons." Adolphson, 205 Conn. at 707.
"Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. . . . The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached." Primerica v. Planning Zoning Commission,211 Conn. 85, 96 (1989) (citations omitted). "The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." Huck v. Inland Wetlands and Watercourses Agency 203 Conn. 525, 539-540 (citations omitted). "The trial court may not retry the case or substitute its judgment for that of the agency on the weight of the evidence or questions of fact." Southington v. State Board of Labor Relations, 210 Conn. 549, CT Page 5031 558 (1989). An "agency's factual and discretionary determinations are to be accorded considerable weight by the courts." Levinson v. Board of Chiropractic Examiners, 211 Conn. 508, 521 (1989). The supreme court has
 said on many occasions that courts cannot substitute their judgment for the wide and liberal discretion vested in local zoning authorities when they have acted within their prescribed legislative powers. Courts must not disturb the decision of a zoning commission unless the party aggrieved by that decision establishes that the commission acted arbitrarily or illegally.
Stankiewicz v. Zoning Board of Appeals, 15 Conn. App. 729, 737
(1988) (citations omitted), aff'd. 211 Conn. 76 (1989). The trial court has a limited scope of review, and the standard of review is whether the agency acted illegally, arbitrarily or in abuse of its discretion or whether the record reasonably supports the Commission's action. Id.
Section 8-3c, entitled "Special Permits, exceptions and exemptions. Hearings. Filing requirements," provides:
 (b) The zoning commission or combined planning and zoning commission of any municipality shall hold a public hearing on an application or request for a special permit. . . . Notice of the time and place of such hearing shall be published in a newspaper having a substantial circulation in such municipality at least twice, at intervals of not less than two days, the first not more than fifteen days, nor less than ten days, and the last not less than two days before the date of the hearing. In addition to such notice, such zoning commission may, by regulation, provide for notice by mail to persons who are owners of land which is adjacent to the land which is the subject of the hearing. . . . Whenever a commission grants or denies a special permit . . . it shall state upon its records the reason for its decision . . . . (emphasis added).
Conn. Gen. Stat. Sec. 8-3c (rev'd to 1989).
Pursuant to Sec. 118-1450B(2) of the Norwalk Zoning Regulations, notice of the time and place of the hearing shall be given in accordance with CGS Sec. 8-3c. Additionally, the commission "shall approve, approve with conditions or disapprove the application within sixty-five days after the public hearing. In approving the application the Commission shall set an effective date and may attach such conditions to the Special Permit as shall ensure compliance with the requirement of subsection C of this section and any other applicable section of these regulations. The Commission CT Page 5032 shall set forth the grounds for its action in a report which shall be incorporated into the minutes of its meeting." Norwalk zoning Regulations (hereinafter "Regulations") Sec. 118-1450B (3).
In his brief, the plaintiff contends that the action of the Commission was illegal, arbitrary and in abuse of its discretion because (1) the notice sent to the plaintiff failed to disclose the true nature of the hearing; (2) the plans did not provide for adequate parking; (3) the Commission failed to articulate the proper criteria in making its decision to approve the site plan review and special permit applications; and (4) the applications violated the Regulation's use requirements.
1. Notice of the Hearing
The notice requirements of CGS Sec. 8-3c do not require precision but only reasonable notice of the action to be taken at the hearing. Kleinsmith v. Planning Zoning Commission of the Town of Greenwich, 157 Conn. 303, 310 (1968); Bombero v. Planning Zoning Commission, 17 Conn. App. 150, 154 (1988); Passero v. Zoning Commission of the Town of Norwalk, 155 Conn. 511, 514 (1967), cert den. 390 U.S. 1004.
As previously noted, Sec. 8-3c(b) of the General Statutes and Sec. 118-1450 of the Regulations set forth the hearing and filing requirements for special permits. Section 118-1451 of the Regulations states that the notice of the time and place of a hearing for a site plan review must be in accordance with CGS Sec. 8-3c. Section 8-3c(b) states that in addition to publishing notice of the public hearing in a newspaper, the Commission may provide for notice by mail to a person who is an owner of land which abuts land that is the subject of the hearing.
A notice regarding the July 19, 1989 public hearing was published in The Hour on July 7 and 14, 1989. (ROR Nos. 1, 14). This legal notice categorized its applications into three categories. (ROR No. 1). The applicant's application was under the first section entitled "SPECIAL PERMITS". (ROR Nos. 1, 14). The notice mailed to the plaintiff made reference to the site plan review application. (ROR No. 8 — see the attachment and Complaint-Ex. A).
The published legal notice was sufficient regarding the subject matter and time and place of the public hearing. The Commission has not provided in its regulations for personal notice and, therefore, it is not required. See Sec. 118-1450B (2).
Additionally, the notice which was mailed to the plaintiff sufficiently informed him that the subject matter of the hearing would be a site plan review application and if he needed more information he would be able to inspect the application. As of May CT Page 5033 19, 1989 the applicant had on file two applications: (1) a special permit and (2) a CAM site plan review. It is within the Commission's discretion to hold a public hearing regarding any coastal site plan, but if one is held notice must be in accordance with Sec. 8-3c. (Regulations, Sec. 118-1110C(1)). Moreover, CGS Sec. 8-3c(b) and Sec. 118-111C (1) and Sec. 118-1450B (2) of the Regulations do not say that the nature of the public hearing must be set forth in detail; the main purpose of the regulations is for interested parties to receive reasonable notice. See Kleinsmith, 157 Conn. at 310.
Additionally, although plaintiff's counsel represented plaintiff at the public hearing, the verbatim transcript does not contain any objections to the hearing for lack of adequate notice, and no such argument was raised until one month later. (ROR Nos. 4, 8), Rather, at the public hearing, plaintiff's counsel and leasing agent opposed the application because they alleged that there was inadequate parking. (ROR No. 4, p. 3) The court finds that, based upon the above regulations and the pertinent items in the Return of Record, the Commission complied with the CGS Sec. 8-3c and therefore, the plaintiff was fairly apprised of the nature of the public hearing.
2. Parking Spaces
Section 118-1220 of the Regulations is entitled "Amount of motor vehicle parking space to be provided." Subsection C provides for the minimum number of off-street motor vehicle parking spaces as follows: (1) offices are required to have "one parking space per 300 square feet ("sq. ft.") of active commercial floor area" (see Sec. 118-1220C(12) (b)) and (2) warehouses are required to have "one parking space per worker employed at any one time, plus one parking space per 5,000 sq. ft. of floor area or fraction thereof; where number of workers cannot be determined, one parking space per 500 sq. ft. of floor area" is required. (See Sec. 118-1220C(15) (b)).
Thus, in order to determine the number of parking spaces required for office space, the amount of active commercial floor area must be determined. Section 118-1220B, entitled "Active commercial floor area" provides that:
 (1) Active commercial floor area [applies to Subsection C(11), (12) and (14)] is the area the use of which is directly related to parking generation and shall specifically exclude area devoted to the housing of automated equipment, service equipment, inventory storage space, space devoted to serving and maintaining the premises, employee service, common lobby area in off ice buildings, etc.
 (2) Until the active commercial floor area is known, seventy-five percent (75%) of the gross floor area shall CT Page 5034 be the basis for determining the parking and loading required.
This definition explicitly applies to Subsection C(12). See Sec. 118-1220B (1).
In the February 25, 1991 supplemental ROR is a copy of a plan entitled "Addition to 14D Water Street, Gaertner Research." (ROR No. 20, which should have been listed as No. 23 (hereinafter: No. 20/23)). This architect plan, dated June 12, 1989, contains Drawing Numbers A1, A2, S1 and S2. (ROR No. 20/23). Drawing number S1 lists zoning information which states that the Regulations require 48 parking spaces. The architects showed that the plan provides for 52 parking spaces and listed its calculations for the required 48 spaces as follows:
 Existing office 5,085 sq. ft. x. .75/300 = 13 warehouse 9,915 sq. ft./5,000 = 2 8 employees (1 per) = 8 Proposed office 10,000 sq. ft. x. .75/300 = 25 Total 48 parking spaces
A close examination of the plan reveals that there are groups of parking spaces in the following clusters: 6 + 4 + 11 + 5 + 13 + 11 = 50 + 2 handicapped parking spaces = 52 parking spaces. (ROR No. 20/23). Furthermore, ROR No. 3 is a letter from the Chair of the Plan Review Committee to the Chair of the Zoning Commission which states that a "new parking area is proposed with 52 spaces provided for on the site." (ROR No. 3). The Plan Review Committee moved that the CAM application, as shown on various plans by the architect and engineers, be approved "because the plans comply with the appropriate sections of the Zoning Regulations." (ROR No. 3)
The verbatim transcript of the public hearing has the following testimony which further supports the Commission's decision:
 We [applicant's experts] went before the Zoning Officer and he . . . wanted to know the kinds of uses, he actually wanted to go in and take the square footage of the building. So, the architect did go down there and take physically the inside of the building along with computations; were more than adequate and the Zoning Officer agreed and signed off on it. 52 spaces is all you need, which includes the proposed 10,000 s.f. 52 spaces provided.
(ROR No. 4, p. 4). CT Page 5035
The plaintiff's traffic consultant reported that he checked the plots at the Zoning Office and it indicated space for 52 vehicles. (ROR No. 7, p. 3). Upon questioning this total he was told by the Zoning Office that "office space required 300 sq. feet per parking space." (ROR No. 7, p. 3). This expert figured "17,000 sq. feet of office space @ 300/space = 57 spaces, and 8,000 sq. feet at warehouse 500/space = 16 spaces or a total requirement of 73 parking spaces." (ROR No. 7, p. 3).
It is clear that the opposing parties used different formulas and different amounts of floor area to determine the number of required parking spaces. The correct formula is that proffered by the defendant, which takes into account the definition and computation for active commercial floor area. The ROR reasonably supports therefore, the Commission's decision. The court finds that the Commission acted upon valid reasons with regard to the parking spaces.
The court does not address plaintiff's argument that unenclosed surface parking shall not be closer than fifty feet from the front property line pursuant to Sec. 118-505E(2), since this issue was not raised in the complaint. "The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent unfair surprise." Farrell v. St. Vincent's Hospital, 203 Conn. 553, 557 (1987) (citations omitted).
3. Reasons supporting Commission's Decision
The plaintiff contends that CGS Sec. 8-3 (c) and Sec 118-1450B(3) of the Regulations require the Commission to state the reasons for its decision to grant a special permit and incorporate these grounds into its minutes. With regard to the site plan, the plaintiff contends that CG 8 Sec. 8-3 (g) and Sec. 118-1451B of the Regulations require the Commission to give reasons for modifying a site plan.
The defendant contends that the CAM Site Plan Review statutes only require a statement of reasons if the Commission decides to deny, modify or condition a coastal site plan permit pursuant to CGS Sec. 22a-109 (f). Also, both parties correctly admit that the statutory language in CGS Sec. 8-3 (c) and Sec. 118-1450B(3) and 118-1451B is only directory, not mandatory, so failure to comply does not render the Commission's action void. (Plaintiff's Brief, pp. 21-22; Defendant's Brief, p. 11). Morningside Assn. v. Planning Zoning Board, 162 Conn. 154, 156 (1972).
Furthermore, record items Nos. 3, 9 and 11 illustrate the reasons why the Commission approved the site plan and special permit. The minutes of the Commission's August 16, 1989 meeting state that the Commission CT Page 5036
 RESOLVED that CAM application #10-89SP C. Gaertner, 140 Water Street, for the construction of a two story 10,000 sq. ft. addition as shown on various plans by Beinfield, Wagner Associates. Architects, Norwalk, and plans by Grumman Engineering Associates, Engineers. Norwalk be approved with the following conditions because the plans comply with the appropriate sections of the Zoning Regulations:
1). That any additional need for soil erosion controls be installed at the direction of the Commission's staff; and
2) That a 5' waiver of the rear setback be granted as per Section 118-505 D.2 to reduce the rear setback to 10'; and
 BE IT FURTHER RESOLVED that the proposal complies with applicable coastal resource and use policies: and
 BE IT FURTHER RESOLVED that the effective date of this approval shall be August 25, 1989.
(ROR No. 11).
The supplemental ROR dated February 25, 1991 contains the proposed storm drainage site plan drawn by Grumman Engineering and five architectural drawings by Beinfield Wagner Associates, Inc. Thus, it is clear that the Commission incorporated into its minutes the reason for its decision to approve the defendant's applications.
The Commission, upon granting the defendant's application for a special permit on August 16, 1989, sufficiently stated upon its record that the reason for its decision was that the applications complied with the Regulations and all applicable coastal resource and use policies. (ROR No. 11).
4. Compliance with the Regulations.
The plaintiff contends that the Commission approved the defendant's special permit applications without taking into consideration the standards set forth in Sec. 118-1450 and the uses permitted by special permit in a marine commercial zone. See Sec. 118-505C (2). Similarly, the plaintiff argues that the standards for site plan reviews, pursuant to Sec. 118-1451, were not followed. Lastly, the plaintiff argues that the reduction in the setback requirement was in violation of Sec. 118-505D (2). The plaintiff states that the record "is devoid of support for, and indeed militates CT Page 5037 against, many of these considerations." (Plaintiff's Brief, p. 26).
(a) Setback Requirement Section 118-505D (2) provides that the
 rear yard may be waived or modified by the Commission where the proposed use preserves and enhances water dependent uses or where a lesser setback would maximize public views of and access to the waterfront or where the reuse of existing buildings and structures is considered to be consistent with the purposes of the district
Sec. 118-505D (2) (emphasis added). In addressing the applicant's 5 foot waiver of the rear setbacks, the Plan Review Committee stated that "the new walls could be built directly over the existing walls, making the addition easier to construct structurally." (ROR Nos. 3, 9). This waiver left a 10 foot setback instead of the required 15 feet. (ROR Nos. 3, 9). However, the waiver allows the reuse of an existing building which is consistent with the purposes of the district. See Sec. 118-505D(2) and ROR No. 11. The commission resolved that the proposal complies with applicable coastal resource and use policies and therefore the waiver of the setback requirement did not violate Sec. 118-505D(2).
(b) Principal uses pursuant to Sec. 118-505D(2).
The plaintiff contends pursuant to Sec. 118-505C that the Commission's approval of the application is not permitted in a Marine Commercial Zone. However, Sec. 118-505C(2), entitled "Special permit uses and structures", is applicable to the defendant's application and permits offices and storage facilities. See Sec. 118-505C(2)(c)(f).
Furthermore, even under Sec. 118-505C (1)(h) marine research labs and related facilities are permitted. See Sec. 118-505C (1)(h). The proposed use of the property is to continue "extensive naval research." (ROR No. 4, p. 2). Nevertheless, subsection (2)(c) is the applicable section, to which the defendant's application conforms. (c) Standards for special permits and site plans
Sections 118-1450 and 1451 set forth the standards for special permits and site plans, respectively. The plaintiff argues that the Commission did not take into consideration the following: (1) the effect of the proposed development on traffic volume, flow, control and safety (Secs. 118-1450C (1)(b) and Sec. 118-1451C (1)) and (2) the effect of the proposed development on adjacent neighborhood properties (Sec. 118-1450C(1)(h) and Sec. 118-1451C(6)).
The Commission received two traffic reports before it CT Page 5038 rendered a decision on August 16, 1989. The first traffic report was conducted by I. K. Chann Associates pursuant to the applicant's request. (ROR No. 21). This report was dated May 22, 1989 and received by the Commission on May 27, 1989. (ROR No. 21).
The second traffic report, dated August 13, 1989, was received on August 15, 1989. (ROR No. 7). This second traffic report was conducted by a retired Bridgeport policeman, at the plaintiff's request, and it contained three pages of a typed report, one chart, one page of definitions and his resume. This traffic consultant concluded that if the proposed addition was approved, "it would add substantially to the existing heavy traffic, and create a hazard to the motoring public, and increase the risk of injury to pedestrians, and accidents." (ROR No. 7).
The first traffic report was conducted by a transportation engineer and it contained twelve pages of a typed report, eight figures/charts, eight appendices, a firm resume and a personal resume. This consultant concluded that the proposed addition would "have insignificant traffic impact on South Water Street and nearby intersections and can be satisfactorily accommodated in terms of on-site and off-site traffic operations and safety." (ROR No. 21, p. 12).
Both reports took into consideration the traffic volume, flow, control and safety as well as the effect on the adjacent properties. (ROR No. 7, pp. 2-3 and ROR No. 21, pp. 2-5, 7-12). The standards for special permits and site plan reviews were not ignored. Furthermore, even though the reports stated different conclusions, it is for the Commission to determine the credibility and weight of the evidence. Thus, the record supports the Commission's determination that such standards were met; consequently, the Commission did not violate the Regulations.
CONCLUSION
For the foregoing reasons the plaintiff's appeal is dismissed.
LEHENY, J.