[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED JANUARY 11, 1996
FACTS
This is a zoning appeal by Yale University, the owner of waterfront property at 175-179 Clark Avenue located within the Civic Association of Short Beach in the Town of Branford, and by the Yale Corinthian Yacht Club, a sports club organized by Yale University which operates a sailing facility at the premises.
The Civic Association has zoning powers under a special act of the General Assembly enacted in 1949. Although the zoning authority in the instant case is exercised by a civic association and not by a municipality, the parties were in agreement at the time of argument that nothing in this case is different by reason of the special act from what the result would be if the court were dealing with general act zoning. At the time of the adoption of zoning by the specially chartered association, the subject property was known as "Johnson's Boat Yard" and owned by Clarence Johnson who leased it to the Johnson Boat Works. The property was used as a general purpose full service boat yard and public boating facility involving the construction of small boats, boat repair, boat storage, fueling, mooring, dockage, and a marine railroad. The parties are in agreement that prior to Yale's use of the property which commenced in 1957, the Johnson Boat Yard was a nonconforming use which preexisted Short Beach zoning. Yale's use of the boat yard for its sailing club purposes began in 1957 under Johnson's option to Yale's nominee and continued through 1959 when the property was formally leased by Johnson to Yale. Following a transfer of the property from Johnson to the B.S. Cunningham Company in 1960, Cunningham leased the property CT Page 1136 to Yale in the same year and then subsequently transferred all the property to Yale in 1965.
In 1957, Johnson sought a change of status for the Johnson Boat Works in conjunction with the proposed transfer to Yale University. Johnson's original application was denied on the grounds that the use was nonconforming to the zoning requirements. Johnson then applied to the Short Beach Civic Association for a special exception and for a variance to permit continuation of the nonconforming use of the boat yard as a boating or yachting station for Yale University.
On August 3, 1957, the Association issued a permit which:
 (1) Authorized a continuation of the variance of the site from residence A zone requirements and (2) approved the proposed use by Yale University as an adjunct of the Yale Athletic Association.
At the hearing on Johnson's application, Johnson, or his attorney, provided the Zoning Board of Appeals with a copy of the 1957 Corinthian Constitution in which the objects of the club were stated.
After commencing use of the property in 1957 as a boating station. Yale received additional approvals from the Short Beach Zoning Board of Appeals to modify or replace the boat houses on the property in 1964 and 1966. In 1982, Yale provided the Civic Association of Short Beach Zoning Commission with details of its proposed junior sailing program which included families having no direct relationship to Yale except for a small contribution to the Yale Sailing Association. The Short Beach Civic Association, which acts as a zoning commission, treated the letter from Yale as an application for permission to publicly advertise the junior sailing program and issued approval for the program subject to conditions which required that the advertising be local in nature, the adjoining public beach not be utilized in the sailing program, noise be controlled, parking regulations be observed, and offered use of the Short Beach fire training facility for additional parking during regattas.
On July 8, 1994, the Civic Association issued a cease and desist order to Yale and the club, requiring that the club terminate operations and activities at the boat yard which involved participation by persons not members of the "Yale CT Page 1137 University community." The order was based upon the premise that Yale had exceeded the uses permitted by the 1957 variance in failing to limit the use of the boat yard to persons affiliated with Yale. The cease and desist order was appealed to the Civic Association of Short Beach Zoning Board of Appeals which upheld the order.
In upholding the order the Association Zoning Board of Appeals stated three reasons:
 (1) Use of the Yale boating facility by people not affiliated with Yale is beyond the scope of the 1957 application and grant of variance;
 (2) By its own application in 1957, Yale conditioned and limited the scope of its activities in order to persuade the Zoning Board that its proposed nonconforming use would be lesser than the existing Johnson Boat Yard nonconforming use;
 (3) The YCYC constitution presented with the 1957 application was used by the Board as representing the club's membership and was so intended by Yale because it was submitted as an exhibit.
AGGRIEVEMENT
Aggrievement was not contested at the time of the hearing and facts were stipulated to which were sufficient for the court to conclude that Yale University is the owner of the subject property and that Yale Corinthian Yacht Club is the operator of the subject property. Accordingly, the court finds each plaintiff aggrieved.
DISCUSSION
In argument of the case each side briefed and argued wide-ranging claims having constitutional implications, arguments concerning the abandonment of nonconforming use and the meaning and breadth of variances. The court holds, in view of its decision in the appeal, that it need not consider any of the constitutional claims.
It is clear that prior to August of 1957 the "Johnson Boat Yard" was a valid and protected nonconforming use as that term is CT Page 1138 used in the General Statutes. It is clear that for a period of time while negotiations were continuing for the transfer of the use of the property from the Johnson Boat Yard to Yale or its designated club, a deliberate attempt was made to preserve the status of the Johnson Boat Yard as a nonconforming use while applying for requisite approvals for the proposed Yale use. Sometime prior to August 3, 1957, an application was made by Clarence Johnson, acting through his attorney, to the Board of Zoning Appeals for the Civic Association of Short Beach. Although the application was for the benefit of Yale and for the purpose of Yale conducting its boating club, the application was in fact made by Mr. Johnson and not by Yale.
That application contained the following language:
 1. That your applicant has contracted to sell said premises to an agent of Yale University, for use as a boating or yachting station, subject to the approval of the Zoning authorities. 5. That the prospective purchaser contemplates removal of the present building on said premises and the construction of a new building in substantially the same location. 6. That said proposed construction and use will not impair the integrity of the applicable zoning ordinance nor be detrimental to the public welfare, and that said proposed use will substantially reduce noise, smoke, dust, vibration, fumes and other characteristics detrimental to the neighborhood. 7. Said proposed use will be more nearly in harmony with the residential character of the neighborhood. 8. That by reason of the shape, location and condition of said property, unusual difficulty and hardship will result to your applicant and property values in the affected area will be substantially reduced unless said proposed use is allowed.
The applicant then asked for a special exception in accordance with Article VI, Section III, Para. 4d of the Zoning Ordinance, and further asked that the ordinance be varied in accordance with Article VI, Section III, Para. 3 of the Zoning Ordinance.
In response to the application, the chairman of the Zoning Board of Appeals, A.E. Knowlton, wrote to MacGregor Kilpatrick, CT Page 1139 the attorney for Mr. Johnson, informing him that the request had been approved. That letter, dated August 3, 1957, contained the following language:
 Your petition for transfer of the Johnson Boat House property to Yale University for conversion and use by Yale as a boat station was considered at a well-attended hearing on July 24, 1957 at the Short Beach Fire House.
 Subsequently the petition was deliberated by the full membership of the Short Beach Zoning Board of Appeals. It was decided to resolve the case into three components, as follows: (1) Whether to sanction continuation of the variance of the site from the Residence A requirements of the area in which it lies. Such continuance is hereby approved. (2) Whether the proposed use by Yale University as an adjunct of the Yale Athletic Association should be sanctioned. Such use is hereby approved, subject to the provisions that the proposed workshop be employed only for repair and upkeep of small sailing boats and construction of additions to the university owned fleet to be boarded at Short Beach. (3) Whether the proposed structure and its location on the site is such as to warrant recommendation by this board that the Zoning Board may issue the desired permit. In the absence of filed plans no answer can be rendered on this component at this time.
It is undisputed that at the time that Mr. Johnson and/or his attorney made the application, he submitted with the application the constitution of the Yale Corinthian Yacht Club. At the time of the application in 1957, Article VI read as follows:
 Membership. Membership in the club shall be open to all undergraduates and graduates of Yale University, subject to such limitations as are provided in this constitution and in the by-laws of NEISA.
That constitution was amended in 1970 so that Article VI read:
Membership. Membership in the club shall be open CT Page 1140 to all undergraduates, graduate students, faculty and graduates of Yale University, subject to such limitations as are provided in this constitution and in the laws of NEISA.
In 1985 Article VI was again amended so as to read:
 Membership. Section I. Membership of the club shall be open to all university undergraduates, subject to limitations as provided in this constitution. Section II. Alumni of Yale College who were members of the club as undergraduates may become alumni members, etc. Section III. Summer membership is open to anyone who is affiliated with Yale or who enrolls in summer instruction. Summer members shall be entitled to all benefits of membership as provided by this constitution, except as limited by the executive committee or the head instructor.
Finally, Article VI was again amended in 1990 to read as follows:
 Section I. Membership in this club shall be open to all Yale University undergraduates subject to limitations provided in this constitution. Section II. Alumni of Yale College who are members of the club as undergraduates may become alumni members, etc. Section III. Graduate students enrolled in Yale University or other Yale affiliated persons may apply for and receive membership, etc. Section IV. Summer membership in the club is open to anyone who is affiliated with Yale or who enrolls in summer instruction. Summer members shall be entitled to all benefits of membership as provided by this constitution, except as limited by the executive committee and the head instructor.
The dispute between the parties is relatively simple. The Association claims that Yale was granted a 1957 variance containing an implicit requirement that membership in the club be in accordance with the membership requirements of Article VI as that article existed in 1957. That article could fairly be read as saying that members must be members of the Yale community. CT Page 1141
Conversely, Yale and the club claim that the site continues to be a nonconforming boat yard and that there are virtually no limits upon what Yale can do with the property so long as it is used as some form of boat yard.
The court holds that the Johnson Boat Yard as a nonconforming commercial boat yard was abandoned when Yale obtained its variance on August 3, 1957. Generally the obtaining of a variance in Connecticut requires a showing of exceptional difficulty or hardship which is not self-created. The one exception appears to be found in the Supreme Court opinion in Adolphson v. ZBA,205 Conn. 703 (1988). While the court is well aware that Adolphson
follows the action in question by some 30 years, it appears to the court that the Short Beach Association, in granting the variance, was unknowingly anticipating the Adolphson rationale. The variance appears to have been granted not because there was a unique hardship, but because the proposed university sailing club operation would be less offensive in the residential zone than the nonconforming commercial boat yard which existed as of right. In Adolphson the court allowed a nonconforming foundry to be converted into an automobile repair shop. The court held:
 Accordingly, along with the foundry that cannot be prohibited there are many other permitted activities that are specified in section 19.2 of the regulations. It is significant that the trial court found that the automobile repair shop is `less offensive' than the existing casting foundry, and did not find that it will adversely affect the property values in the industrial district 1 zone. Considering the wide variety of activities permitted in an industrial district 1 zone, we are not persuaded that in granting the Burnettos a variance to use their property as an automobile repair shop, the board is permitting a use that is not in harmony with the permitted property uses in an industrial 1 zone, and, consequently not in accordance with the zoning regulations comprehensive plan. The burden is on the plaintiff to show that the board acted improperly. Like the trial court, we conclude that the plaintiff does not carry that burden. Adolphson, at 714.
The court holds that the only logical understanding of the action of the Civic Zoning Board of Appeals on August 3, 1957 is that it applied the Adolphson rationale 30 years before the CT Page 1142Adolphson decision. The local beach association concluded that the proposed University boat club would be less offensive in its residential district than a nonconforming all-purpose marina. Accordingly, it granted a variance. Nowhere in that variance did it specifically impose membership requirement.
The court further holds that the variance allowed the "use by Yale University as an adjunct of the Yale Athletic Association." The court is not prepared to find that that language is so limited as to imply that the membership or users were only those persons identified as members in the 1957 version of the Yale Corinthian Yacht Club.
The court need not answer the question whether or not the Yale Corinthian Yacht Club could be operated by a different university or as a private sailing club. The court does hold that as the Yale Corinthian Yacht Club amends its constitution and by-laws from time to time, so long as it continues to be a Yale-related sailing club, it may operate in accordance with its by-laws and constitution. Particularly in view of the fact that the association specifically authorized the summer program, the court holds that the club may operate at the present time in accordance with the 1990 revision to Article VI Membership.
The court finds that the nonconforming use of the Johnson Boat Yard or any commercial boat yard has been voluntarily abandoned. The court finds that so long as this facility is used by an organization with substantial ties to Yale University and so long as it is used in accordance with the constitution and by-laws of that organization, there is no violation of the local zoning regulation.
The court finds that the present use of the facility is in accordance with the 1957 variance and, accordingly, the appeal is sustained and the cease and desist order is vacated.