[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs have appealed from the action of the Bozrah Zoning Board of Appeals in modifying a Cease and Desist CT Page 8042 Order which Cease and Desist Order sought to prohibit all use of the plaintiff's campground between November 1 and March 31 of each year. The defendant Board modified the Cease and Desist Order by substituting for the total prohibition a restriction that no campsite or camper unit shall be used during the winter months more than 4 days per week.
I. STATEMENT OF FACTS
Many of the facts that give rise to this appeal are not in dispute. Those facts, as stated in the defendants' brief, are as follows:
The plaintiffs own approximately 113 acres of land on Lake Road in the Town of Bozrah which they use as a campground known as "Acorn Acres". On November 12, 1989, Benjamin E. Hull, the Zoning Enforcement Officer for the Town of Bozrah (hereinafter referred to as the "Defendant ZEO"), served a Cease and Desist Order on the plaintiffs, citing a violation of Section 11.8.5 of the Bozrah Zoning Regulations which prohibits camping activities after November 1st of any calendar year, designated by the regulations as the closing date of the camping season in any calendar year.
The plaintiffs, by notice of appeal dated 11/27/89, requested the Bozrah Zoning Board of Appeals to reverse and overturn the Cease and Desist Order on 4 grounds: "(1) Winter use is an existing nonconforming use; (2) Use does not violate the Zoning Regulations; (3) Town is estopped from enforcement action; and (4) Procedural deficiencies in the Cease and Desist Order."
On January 18, 1990, the defendant Board held a public hearing on the plaintiffs' appeal. At that time testimony was taken and all parties were given an opportunity to be heard. The public hearing was continued and closed on February 7, 1990. On March 15, 1990, the defendant Board met to deliberate and decide the plaintiffs' appeal. Pursuant to Section 8-7 of the Connecticut General Statutes, the defendant Board modified the Cease and Desist Order of the defendant ZEO and determined "(t)hat Acorn Acres be allowed to use those sites previously used for year-round camping for only 4 (four) days per week from November 1st to April 1st".
It is from this decision rendered by the defendant Board modifying the Defendant ZEO's order that the plaintiffs appeal.
The parties have further stipulated to the following facts: CT Page 8043
1. The plaintiffs, Patrick Quinn and Marion Quinn, since the early 1960's have owned approximately 113 acres of land in Bozrah, Connecticut, which they use as a camping ground known as "Acorn Acres".
2. Currently, the Acorn Acres campsite has 210 individual campsites.
3. Acorn Acres is not a residential, mobile home park.
4. Between 1986 and 1988, the Quinns upgraded a total of 45 camper sites by insulating water and sewer hookups.
5. Prior to 1984, the Bozrah Zoning Regulations did not restrict and/or prohibit use of campgrounds during the winter months.
6. In 1984 the Bozrah Planning and Zoning Commission adopted a zoning regulation regarding camping, differentiating between winter and summer months which became effective February 1, 1984. That regulatory language at Section 11.8.5 of the amended regulations stated: "No campsite or camper unit shall be occupied for more than four days out of any week except during the normal camping season." The term "camping season" was not defined in the regulations.
7. In February of 1989, the Bozrah Planning and Zoning Commission amended Section 11.8.5 of its Zoning Regulations to become effective March 10, 1989 and to read: "No campsite or camper unit shall be occupied except during the camping season of April 1 through the following November 1." Any camping except during the summer months was prohibited.
8. On or about November 2, 1989, Benjamin E. Hull, the Zoning Enforcement Officer for the Town of Bozrah, served the plaintiffs with a Cease and Desist Order, citing a violation of Section 11.8.5 of the Zoning Regulations. The Order stated: "Acorn Acres Campground, 135 Lake Road, Bozrah, CT, is allowing campers to continue camping activities after November 1, 1989, closing date of camping season."
9. On or about November 27, 1989, the Quinns filed an appeal with the Bozrah Zoning Board of Appeals to reverse and overturn the Cease and Desist Order on four grounds:
(1) Winter use is an existing nonconforming use;
(2) Use does not violate the Zoning Regulations; CT Page 8044
(3) Town is estopped from enforcement action; and
 (4) Procedural deficiencies in the Cease and Desist Order.
10. On January 18, 1990, the Bozrah Zoning Board of Appeals held a public hearing on the Quinns' appeal which was subsequently continued and closed on February 7, 1990.
11. On March 15, 1990, the Bozrah Zoning Board of Appeals modified the Zoning Enforcement Officer's Cease and Desist Order and decided "(t)hat Acorn Acres be allowed to use those sites previously used for year round camping only four (4) days per week from November 1st to April 1st.
12. The Zoning Board of Appeals' decision was published in the Norwich Bulletin on March 21, 1990.
13. On or about April 2, 1990, the Quinns appealed the Zoning Board of Appeals' decision and it is this appeal which is currently before this Honorable Court.
II. FUNCTION OF TRIAL COURT
Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or within proper motives or upon valid reasons. Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 707 (1988).
The same rule regarding the function of the trial court on appeal is found in Vernex v. Planning and Zoning Board of Appeals, 151 Conn. 578, 580 (1964), where the court stated as follows :
 The appeal to the court from the decision of the board did not require nor permit the court by trial de novo to substitute its finding and conclusions for the decision of the board. Its functions are limited to a determination whether the board had, as alleged on the appeal, acted illegally, arbitrarily and in abuse of the discretion vested in it. We have frequently asserted, as a fundamental proposition, that the decision of zoning authorities are to be overruled only when it is found that they have not acted fairly, with proper motives, and upon valid reasons. Where it appears that an honest judgment has been reasonably CT Page 8045 and fairly exercised after a full hearing, courts should be cautious about disturbing the decision of the local authority.
III. BURDEN OF PROOF
The burden of proof to demonstrate that the board acted improperly is upon the plaintiff. Adolphson v. Zoning Board of Appeals, supra at 707; Vernex v. Planning and Zoning Board of Appeals, supra at 580.
IV. AGGRIEVEMENT
The court finds that the plaintiffs as owners of the property in question are aggrieved from the decision of the defendant board.
V. PLAINTIFFS' CLAIMS
The plaintiff raises two separate and distinct claims in this appeal. They are as follows: (1) The prohibition imposed by the board on the use of the campground more than four (4) days per week during the winter months is an illegal restriction on a pre-existing nonconforming use and (2) The defendant Board and the Town of Bozrah are estopped to limit use of the 45 upgraded sites to four (4) days per week.
These claims will be considered seriatim.
A. THE PLAINTIFFS' CLAIM THAT THE PROHIBITION IMPOSED BY THE BOARD ON THE USE OF THE CAMPGROUND MORE THAN FOUR (4) DAYS PER WEEK DURING THE WINTER MONTHS IS AN ILLEGAL RESTRICTION OF A PRE-EXISTING NONCONFORMING USE.
In order for a use to be considered nonconforming under Connecticut Case Law, that use must possess two characteristics. First, it must be lawful and second, it must be in existence at the time that the zoning regulation making the use nonconforming was enacted. Helicopter Associates, Inc. v. Stamford, 201 Conn. 700 (1986); Melody v. Zoning Board of Appeals, 158 Conn. 516 (1969).
As to the application of the zoning regulation to the plaintiffs' situation, it became the duty of the zoning board of appeals to decide, within prescribed limits and consistent with the exercise of the legal discretion, the application of the ordinance to the instant facts. Because the board was determining the reasonableness of the decision of the Zoning Enforcement Officer, it was acting administratively in a quasi-judicial capacity in applying its regulations. Lawrence CT Page 8046 v. Zoning Board of Appeals, 158 Conn. 509, 513-514 (1969). In discharging this responsibility, a board is endowed with a liberal discretion, and its action is subject to review by the courts only to determine whether it was unreasonable, arbitrary or illegal. Connecticut Sand and Stone Corp. v. Zoning Board of Appeals, 150 Conn. 439, 442 (1963). In voting to allow camping for no more than four (4) days in any week during the winter camping season from November 1 until April 1 the minutes of the Zoning Board of Appeal's of March 23, 1990 state as follows:
 Mr. Kaplan said he fot the feeling that as a commission they are not willing to overturn the cease desist order or accept the cease and desist but are willing to go with some sort of modification and asked if this was correct. Mr. Jensen, Mr. Bean and Mr. Kofkoff all answered yes. Mr. Kaplan then stated that everyone has discussed to modify it to the 4 days per week during off season, and asked if everyone would feel comfortable with this as far as a modification in regards to the cease desist is concerned. Mr. Kofkoff feels it would be the right decision to make. Mr. Kaplan expressed his opinion by stating that the other 3 members of the board have changed his mind. He feels they have made a good case around their decision. Basically he agrees with the rest of the board, he feels it is an equitable and just decision. The board at this time will vote. The vote per each member present is as follows: Mr. Kofkoff: To modify the cease an desist order and to allow camping for no more than 4 days in any week during the winter camping season from November 1, until April 1, Reasons: Acorn Acres Campground had winter camping of very limited times such as weekends long weekends, prior to the 1984 regulation. After 1984 regulation was passed, Acorn Acres was a conforming use and that they complied in the beginning with the 4 day camping, some time later Acorn Acres begin to violate the regulation allowing only 4 day camping. When the 1989 regulation went into affect they had a right to continue camping as a non-conforming use. Mr. Jensen: Basic definition of a campground is for recreation use. Does not see where you could overturn the cease desist order CT Page 8047 because the recreation regulation was designed for vacation and not for permanent occupancy. Mr. Bean: vote to modify cease and desist order, in the manner described by Mr. Kofkoff, regarding 4 days camping per week. Reasons: similar to Mr. Kofkoff I think they have shown that there was some existing use prior to the 1984 regulation and after. Perhaps in combination with the use in this violation between 1984 1989. He feels they still qualify for the non-conforming use for the earlier regulations of 4 days per week. But they do not qualify for a non conforming violating use. Mr. Kaplan: will vote for 4 day a week camping. Existing regulations came about because of the result of extension of the camping season. In his opinion, Mr. 
Mrs. Quinn are entitled to 4 day use that they operated with. As far as the cease 
desist order served by the Zoning Enforcement Officer, the Zoning Board of Appeals has voted unanimously to modify the existing cease desist order to allow 4 day camping as it was prior to the zoning laws that were in contention and question. Meeting adjourned.
The legal notice of the decision of the defendant Board reads as follows:
 That Acorn Acres be allowed to use those sites previously used for year-round camping for only 4 (four) days per week from November 1st to April 1st.
The defendant Board argues in part as follows in support of its decision:
 1. Winter use was not established by the plaintiffs prior to 1984 in order to establish a preexisting nonconforming use which predated zoning.
 2. Winter use was established on or around 1986 and before February of 1989 for the 4 campsites which the plaintiffs began upgrading in 1986. However, this winter use was limited to the extent of permitted winter camping under the Zoning Regulations CT Page 8048 then in effect: No more than four days per week. (See Return, Item IIV)
 3. The defendant ZEO's Cease and Desist Order prohibiting no winter camping on plaintiff's premises at all needed to be modified. (See Return, Item IIA) That modification became the Defendant Board's decision: "That Acorn Acres be allowed to use those sites previously used for year round camping for only 4 (four) days per week from November 1st to April 1st." (See Return, Items ID and IE).
As stated earlier, the first requirement for a use to be considered nonconforming is that it must be lawful. What is in dispute is whether winter use was established by the plaintiffs prior to 1984 and if so, to what extent it was established and for how many campsites was it established. Under the 1976 zoning regulations of the Town of Bozrah, recreational camping grounds were allowed without any limitation as to the number of days per week a campsite could be occupied. It was not until the adoption of the 1984 zoning regulations that the restriction that no campsite or camper unit shall be occupied for more than 4 days out of any week except during the normal camping season was adopted. The board had presented before it conflicting evidence as to whether winter use was established by the plaintiff prior to 1984. It was for the board to decide the credibility of the evidence presented to it. This court finds that the board's conclusion that the plaintiff had not established winter use prior to 1984 was not unreasonable, arbitrary or illegal.
The second requirement to establish a nonconforming use is that the use must be in existence at the time that the zoning regulation making the use nonconforming was enacted.
In discussing this requirement the court in Helicopter Associates, supra. at page 713 stated in part as follows:
 In several prior decisions we have articulated the test for identifying an existing use. "For there to be an existing use, premises must be so utilized as to be known in the neighborhood as employed for a given purpose. Such utilization combines two factors: (1) the adaptability of the land for the purpose; (2) the employment of it within that purpose. In addition, the use must be actual and not merely contemplated. CT Page 8049
 Moreover, we have unequivocally stated that neither the extent, quantity nor quality of the use is prescribed by the "known of the neighborhood" test. Melody v. Zoning Board of Appeals, supra. 520-21. "The court is not generally required to speculate as to the number of acts or business transactions necessary to constitute an existing use."
It is clear from the record and from the interpretation of that record by the defendant Board that winter use was established on or around 1986 and before February of 1989 for the 45 campsites which the plaintiffs began upgrading in 1986.
The decision of the board that the plaintiffs had not established year-round use including winter use of their campground sites prior to the adoption of the 1984 zoning regulation was based on conflicting evidence presented to it. There is no basis to find that this determination resulted in the board acting illegally, arbitrarily or in abuse of the discretion vested in it. From the record in this case, it appears that an honest judgment has been reasonably and fairly exercised after a full hearing. The plaintiffs argue in part as follows:
 Even if we assume for the moment that the evidence in this case does not establish use throughout the winter months, i.e., in excess of four days per week, prior to 1984, the acknowledgement by the Zoning Board of Appeals in its modified order that there was an actual, existing, lawful and substantial use of the property during the winter months sufficient to allow the plaintiffs to use it at least four days per week, prohibits the Board from restricting use during the additional three days. As noted above, for the Board to attempt to regulate the plaintiffs' nonconforming use by the number of days that individual campsites are utilized, rather than looking at the general use of the property as a campground during the winter months, violates the analysis set forth in the Melody and Helicopter Associates cases.
 Thus, the Board's modified order is an illegal restriction on a preexisting CT Page 8050 nonconforming use and must be overturned.
The court is not persuaded by that argument.
As stated in Beerwort v. Zoning Board of Appeals,144 Conn. 731, 758, 137 A.2d 756 (1958) supra at 758, the Supreme Court, in discussing the extension of use of a trailer park from seasonal use to year round use, stated:
 Does the use of property during the whole year rather than just a portion of the year constitute the extension of a nonconforming use at the expense of a conforming use? In light of what has been previously stated as to the intent of zoning regulations generally, it is manifest that an extension in time is in fact a type of extension proscribed by the regulations and is consequently an extension which calls for the application of the principle that "nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit" (i)n no case should they be allowed to increase." Salerni v. Scheuy, 140 Conn. 566, 570, 102 A.2d 528, 530 (1954); Stern v. Zoning Board of Appeals of City of Norwich, 140 Conn. 241, 244, 99 A.2d 130 (1953). (Emphasis added)
This court concludes based on Beerwort that an extension of the use from 4 days per week to 7 days per week would constitute an illegal extension of a nonconforming use.
B. THE PLAINTIFFS' CLAIM THAT THE BOARD AND THE TOWN OF BOZRAH ARE ESTOPPED TO LIMIT USE OF THE 45 UPGRADED SITES TO 4 DAYS PER WEEK.
The law in Connecticut on municipal zoning estoppel, as stated in West Hartford v. Rechel, 190 Conn. 114, 121 (1983) is as follows:
 This court has recently restated the law of municipal estoppel. In Zoning Commission v. Lescynski, 188 Conn. 724, 731-32, 453 A.2d 1144 (1982), we held that, in special circumstances, a municipality may be estopped from enforcing its zoning regulations. We recognized that estoppel always requires "proof of two essential CT Page 8051 elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury. Bozzi v. Bozzi, 177 Conn. 232, 242, 413 A.2d 834 (1979); Dupuis v. Submarine Base Credit Union, Inc., 170 Conn. 344, 353, 365 A.2d 1093 (1976); Pet Care Products, Inc. v. Barnett, 150 Conn. 42, 53-54, 184 A.2d 797 (1962)." Zoning Commission v. Lescynski, supra, 731. In municipal zoning cases, however, estoppel may be invoked "(1) only with great caution, (2) only when the resulting violation has been unjustifiably induced by an agency having authority in such matters, and (3) only when special circumstances make it highly inequitable or oppressive to enforce the regulations. Dupuis v. Submarine Base Credit Union, Inc., supra, 354." Id., 732; see also 8A McQuillin, Municipal Corporations (3d Rev. Ed. 1976) Section 25.349; 9 McQuillin, supra, Section 27.56; 3 Rathkopf, Law of Zoning and Planning (4th Ed. 1982) Section 45.05(1) (b (b).
In arguing that the facts of this case support a claim of estoppel, the plaintiffs argue in part as follows:
 The facts here support a claim of estoppel with respect to the 45 sites which were upgraded between 1986 and 1988 at a cost of $200,000. In October 1987, when the upgrading of the sites became known to town officials, the Quinns were asked by the Zoning Enforcement Officer to appear before the Planning and Zoning Commission to explain what they were doing and to receive directions as to whether it was in conformity with the regulations. Unquestionably, the Zoning Enforcement Officer and the Planning and Zoning Commission are the officials in the town authorized to deal with such matters. In addition, the Quinns had no alternative way to obtain a definitive interpretation of the legality of the proposed upgrading than to CT Page 8052 approach the Zoning Enforcement Officer and the Planning and Zoning Commission. Because a nonconforming use — a particularized fact issue — was the problem for discussion, there was no definitive guidance for the Quinns in the text of zoning regulations on the issue. Although the minutes per se of the Planning and Zoning Commission meeting of October 8, 1987 are not crystal clear, Mr. Quinn testified at the public hearing before the defendant Board, without any contradiction, that his understanding after that meeting was that he had authority to proceed with the upgrades. The fact that the upgrades proceeded for two years thereafter, and that the Town of Bozrah and the State of Connecticut issued all required permits for the upgrades, fully supports his testimony in this regard. Given these facts, the Quinns' actions in continuing with the upgrade were reasonable.
The court is not persuaded by the argument.
It is true that the plaintiffs did appear before the Town of Bozrah Planning and Zoning Commission in October 1987. However there is no mention made in the minutes of that meeting that the plaintiffs were intending to use their property on a year-round full time basis for camping. The only mention regarding the intention of the plaintiffs was to "upgrade" the campsites. The plaintiffs had the right under the existing regulations to upgrade their campsites. There is no indication in the minutes of that meeting that the issue of year-round full time camping on the plaintiffs property was discussed.
This court therefore concludes that the plaintiffs were not induced by any actions of any town agency to believe that they had the right to use their campground for full time year-round camping.
ORDER
The appeal is ordered dismissed.
AXELROD, J.