[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff appeals the decision of the defendant, Zoning Board of Appeals of the Town of Trumbull, upholding the Zoning Enforcement Officer's issuance of a cease-and-desist order.
On March 19, 1990, the Zoning Enforcement Office of Trumbull, Donald G. Murray, issued a cease-and-desist order (ROR #11a) that ordered the plaintiff, Linda Lee Menillo, to discontinue nonseasonal use of a cabin she owned at 31 Pinewood Trail, Trumbull (Pinewood Lake). (See ROR #11c: also Plaintiff's Exhibit 1, certified warranty deed.) On March 29, 1990, Menillo filed a notice of appeal with the ZBA. (ROR #1.)
After publishing notice on April 21, 1990 (ROR #2), the 2BA held a public hearing on May 2, 1990. (See ROR #5, Minutes of the Meeting.) The ZBA continued the matter until August 1, 1990. (See ROR #7, notice of continuance; ROR #9, notice of publication.)
The ZBA held hearings on the matter on August and 2 (ROR #10, 11, 12), September 5 (See ROR #15), and September 12 (See ROR #16.) The ZBA sustained the appeal for April, May and October, and denied it for November-March. (ROR #17.)
Subsequent to the September 12 public hearing, the ZBA published notice of its decision in the Bridgeport Post on September 24, 1990. (ROR #17.) Menillo served this appeal on September 29, 1990.
The plaintiff received title to the subject premises by warranty deed dated June 29, 1983. (See ROR #11a, address of service; also ROR #11, p. 24.) Prior to the ZEO's order that the plaintiff cease and desist from using her cabin out of season, the Pinewood Lake Association had periodically notified other cabin owners that nonseasonal occupancy was prohibited. (See ROR #11jj; also ROR #11, Transcript, pp. 30-32.) The Association defines "nonseasonal use" as occupancy from November CT Page 8145 1 to April 1. (See ROR #11jj; also ROR #KK, Pinewood Lake Association Bylaws, p. 20.)
On March 19, 1991, the ZEO issued his order, stating that the plaintiff was in violation of the Trumbull Zoning Regulations because:
 The subject property is a pre-existing nonconforming use established as a summer cabin only. It is now being used or has recently been used and/or occupied by you and others during months other than June, July, August and September. Your use and occupancy are in violation of Article I, Section 4 of the Trumbull Zoning Regulations.
(ROR #11a.) Article 1, 4 of the Trumbull Zoning Regulations states: "Any building, structure or use legally existing on the effective date of these regulations, or any amendment thereto, which does not comply with any of said regulations or amendments, may be continued, SUBJECT, HOWEVER, to the following conditions and restrictions." (See ROR #11n and #19, p. 19; emphasis added, capitals in original.) Subsection J of 4 sets out the following condition:
 The use or occupancy of a non-conforming building or structure, used or occupied during a particular season only, or for part of a year only, at times or periods other than said particular season or part of a year is an enlargement of and/or increase to the use or occupancy of the non-conforming building or structure.
(ROR #11, p. 22.)
At the appeal hearing before the ZBA, plaintiff's counsel contested the ZBA's argument that the traditional use of the cabins was limited exclusively to the "summer months," which were defined by the Trumbull Town Attorney, not the regulations, as September through June. (See ROR #11, p. 19.) The ZEO also admitted that he did not know whether the use of plaintiff's cabin was so restricted prior to 1959 (ROR #11, p. 18), when the regulations were amended to include Article I, 4J. (See ROR #19, Zoning Regulations, effective October 15, 1959.) One person at the hearing stated that the plaintiff was told when she bought the cabin that it was winterized and that she could "spend time there but not as a permanent residence" off-season. (ROR #11, p. 24.) Counsel also presented to the ZBA several affidavits of persons who averred that they had lived in their CT Page 8146 cabins off-season. (See ROR #11o, #11p, and #11g.)
Counsel's argument before the ZBA was that, despite contrary claims and the Pinewood Lake Association bylaws restricting occupancy to seasonal use, use of the area under Trumbull zoning was unrestricted. (ROR #11, p. 12.) Counsel introduced an instrument recorded on the Trumbull land records that contained no restrictions other than that the Pinewood properties be used for residential purposes (ROR #11K); a 1938 zoning map that shows the subject area in a nonconforming industrial district surrounded by a Class A residence zone (ROR #11w); a 1953 zoning map showing the Pinewood area within a Class AA residence zone with some Class A residence zoning at the bottom of Pinewood Lake (ROR #11v); and a current zoning map showing the same configuration as the 1953 map. (ROR #11u.) Counsel also produced the 1938 zoning regulations (ROR #11e); the 1956 zoning regulations (ROR #11m); the 1959 regulations (ROR #11n); and the current regulations. (ROR #19.)
Plaintiff's counsel argued that the Pinewood properties fell within a Nonconforming Industrial District in 1938 (ROR #11, pp. 35-36; also ROR #11w, 1938 map), a permitted use of which was residential. (ROR #11L, 1938 Regulations 8(a).) The regulations allowed industrial districts to be used for: "Any use permitted in a residential or business district. . ." (ROR #11L, p. 8.) By 1953, counsel argued, the Nonconforming Industrial District no longer existed, but was now part of a Residence zone. (ROR #11v.) The zone is the same on the current map. (ROR #11u.)
The plaintiff's primary argument was that, although the lots at Pinewood Lake were nonconforming in terms of size, their residential use was legal and appropriate for the zone. (ROR #11, p. 36.) Furthermore, her counsel argued, neither the 1938 nor 1956 regulations contained any seasonal restrictions. (See ROR #11, pp. 36-37; also ROR #11L and 11m.) Although both the 1959 and current Regulations contain restrictive language regarding the enlargement of a seasonal use (ROR #11n and #19, Art. II, 4J), counsel argued that all versions of the regulations contain the same definition of "permitted use" in a residential zone, i.e., "a one-family detached house for one housekeeping unit." (ROR #11, p. 37; also ROR #11L, #11m, #11n, and #19.)
The documents comprising the record were returned to the court on December 31, 1990. This court held a hearing on the matter on July 2, 1991.
In order to take advantage of a statutory right to appeal an agency's decision, the plaintiff must strictly comply with CT Page 8147 the statutory provisions that created the right. Simko v. ZBA,206 Conn. 374, 377 (1988). These provisions are mandatory and jurisdictional. Capalbo v. Planning Zoning Board of Appeals,208 Conn. 480, 484 (1988). Any persons aggrieved by the decision of a Board or Commission may appeal to the superior court for the judicial district in which the municipality is located. Conn. Gen. Stat. 8-8.
Aggrievement is a prerequisite to maintaining an appeal. Smith v. Planning Zoning Board, 203 Conn. 317, 321 (1987). The warranty deed that conveyed title to the plaintiff (See ROR #11c, also Plaintiff's Exhibit 1.) shows that she owns the subject premises and, therefore, she is aggrieved.
A trial court may grant relief on appeal from an administrative decision when the agency has acted illegally, arbitrarily, or in abuse of its discretion. Raybestos-Manhattan, Inc. v. PZC, 186 Conn. 466, 470 (1982). The court cannot, after reviewing the agency's decision, substitute its own decision for that of the board, Frito-Lay, Inc. v. PZC, 206 Conn. 554, 572-73 (1988). The court's function is simply to determine whether the record reasonably supported the agency's decision. Primerica v. PZC, 211 Conn. 85, 96
(1986). The plaintiff has the burden to prove that the board acted improperly. Adolphson v. ZBA, 205 Conn. 703, 707 (1988).
The plaintiff brings this appeal before the court on the ground that although the lot is nonconforming. The use is 3 permitted. Plaintiff's Brief, pp. 3-4. Because the subject premises rest within a residential zone, she argues, her residential use of the cabin is a conforming use, not a nonconforming one. Plaintiff's Brief, pp. 4-5. The plaintiff also relies on Conn. Gen. Stat. 8-2, which states, in part: "Such regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations."
The ZBA argues that Article 1, 4J of the Trumbull Zoning Regulations, reproduced above, "makes any use of a nonconforming dwelling which had been used during a particular season only, an enlargement of that use if the dwelling is used at times other than the designated season." Defendant's Brief, p. 1. The ZBA puts much credence in the Trumbull regulations' explicit distinction between seasonal and year-round use or occupancy. Defendant's Brief, pp. 13-14.
The ZBA also relies on Weyls v. ZBA, 161 Conn. 516 (1971), in which another cabin owner at Pinewood Lake sought to extend his occupancy beyond the summer months. The court determined that Weyls' use constituted "a prolongation of a nonconforming CT Page 8148 use into a season in which such use had not existed at the time of the passage of the regulations." Id. at 519. The court concluded that such an enlargement of an existing nonconforming use was in conflict with Trumbull Zoning Regulation, Art. 1, 4J. Id. at 520. Weyls drew heavily on Beerwort v. ZBA,144 Conn. 731, in which the operator of a seasonal trailer park was ordered to cease-and-desist leasing the premises for year-round occupancy. The court held such use to be "prolongation of a nonconforming use [extraseasonally]." Id. at 734.
If Weyls still has vitality, the case would be dispositive because it deals with the same town, regulations, zone and tract of land at issue in the present case.
The plaintiff argues, however, that Weyls has been implicitly overruled by the court in Petruzzi v. ZBA, 176 Conn. 479
(1979), which involved a plaintiff who sought a building permit to convert a church into a single-family detached home in a district zoned for such use. The building officer denied the permit for noncompliance with current setback, frontage and area requirements. In holding that the board had acted improperly in affirming the denial, the court stated:
 In determining whether to issue the building permit, the building official was required to decide whether the proposed use was in conformity with the applicable regulations. In this case, since the proposed use was a permitted use, the only issue before the building official was whether the lot and building met the requirements of the zoning regulations.
Id. at 482.
Because the subject lot and building in Petruzzi predated the Oxford zoning regulations and had not changed their size or shape since before the regulations, the court held them to be "legally existing nonconformities, and as to them the present provisions. . . as to size and setback requirements are of no consequence." Id. at 482-483. One of the regulations prohibited substitution of one nonconforming use for another, but the court said the uses involved were permitted. Id. at 481. The court also recognized the difference between a nonconforming use and nonconforming structure. Id.
In Helicopter Associates, Inc. v. Stamford, 201 Conn. 700
(1986), the court defined nonconforming use as follows: "[A] use is nonconforming if it legally exists at the time of the zoning change." Id. at 715. (emphasis in original.) The court CT Page 8149 held legal the plaintiff's use of its land as a heliport for up to 36 takeoffs and landings per year because it had applied for a license to so use the property before the town changed its zoning regulations to prohibit such use.
The plaintiff cites Seaside Properties v. ZBA, 14 Conn. App. 638
(1988) for its construction of Petruzzi vis-a-vis Weyls and Beerwort. The plaintiffs in Seaside Properties purchased three nonconforming lots with seasonal homes. New regulations were enacted that made the lots and cottages nonconforming because of size and setback requirements. There were no regulations that distinguished seasonal from permanent dwellings. The court held:
 Those cases holding that a change from the seasonal use of a structure to its year-round use is prohibited by applicable local zoning regulations; see Cummings v. Tripp, 204 Conn. 67, 527 A.2d 1230 (1987), Weyls v. Zoning Board of Appeals, 161 Conn. 516, 290 A.2d 350 (1971); Beerwort v. Zoning Board of Appeals, 144 Conn. 731, 137 A.2d 756 (1958); are not inconsistent with the decision we reach in this case. Those cases are distinguishable from the present case because each involved a nonconforming use of land, while this case involves a permitted use of land with respect to a building or lot having a condition of nonconformity. Petruzzi v. Zoning Board of Appeals, supra, recognizes that this distinction is genuine. In the present case, it is critical. See id., 481 n. 2; 1 R. Anderson, American Law of Zoning (3d Ed.) 6.01, p. 448.
Id. at 641.
The plaintiff also distinguishes Cummings v. Tripp,204 Conn. 67 (1987), in which the court relied on Weyls. "We stated in Weyls that `[t]o be illegal, an extension of a permitted use need not necessarily consist of additional uses of a different character. It may consist of uses of the same character carried on over a substantially additional period of the year.'" Id. at 85. The use at issue in Cummings, however, was the commercial rental of seasonal cabins in a residential zone. Id. at 69-70.
In its brief, the ZBA relies on Weyls, as reaffirmed in Cummings. The ZBA argued the following:
The plaintiff claims, by way of distinction, that her cabin itself is the nonconforming use, not her occupancy of it citing CT Page 8150 Seaside Properties v. Zoning Board of Appeals, 14 Conn. App. 638
(1988), and Petruzzi v. Zoning Board of Appeals, 176 Conn. 479
(1979). Petruzzi quotes from 1 ANDERSON, American Law of Zoning 2d (1976), Section 6.01, p. 355. Id. at 483. However, this distinction, examined in the full context in which it was made, is no distinction at all. ANDERSON in the chapter on nonconforming uses of his 3rd edition (1986) states that:
 As used in this chapter, `nonconforming use' includes not only conduct which is proscribed by applicable zoning restrictions, but also a building or structure which offends the zoning regulations. It is recognized that the distinction between a nonconforming building or structure and a nonconforming use of land is genuine and may be critical. Indeed, some enabling acts separately define `nonconforming structures.' But both nonconforming uses and structures are reqarded herein as nonconforming uses and they will be treated as one except in those instances where they are distinguished by the statutes, the ordinances, or the courts. [Emphasis added.] ANDERSON, American Law of Zoning 3d, Section 6.01.
The Trumbull Zoning Regulations make no such distinction. They treat both nonconforming uses and nonconforming structures as one. In the instant case, because there is a nonconforming use of the land involved, the law in Weyls, supra, controls.
Defendant's Brief, pp. 9-10.
Although the ZBA's contention may be correct as far as it goes (see emphasis in quotation above), its application in the present cases hinges on whether the use was nonconforming at all. The residential use of the cabins was a conforming use under all versions of the regulations and all zoning configurations heretofore presented. (See ROR #11L, 1938 Regulations; ROR #11m, 1956 Regulations; ROR #11n, 1959 Regulations; ROR #19, Current Regulations; ROR #11w, 1938 Zoning Map; ROR #11v, 1953 Zoning Map; and ROR #11u, Current Zoning Map.) The case does not involve, for example, a prohibited commercial use in a residential zone or a residential use in an industrial district.
The ZBA heard and considered conflicting evidence as to the traditional seasonal nature of the use. (See ROR #11jj, letters to cabin owners; ROR #11KK, Association Bylaws; RO #11o, 11p, and 11q, Affidavits; ROR #11t, Affidavit regarding the history of the cabins; ROR #11, Transcript, pp. 15-35.) The credibility CT Page 8151 of the witnesses and the determination of factual issues are matters solely within the province of the agency. Lawrence v. Kozlowski, 171 Conn. 705, 708 (1976). The issue in this case is one of law, not fact. Specifically, the existence of actual seasonal restrictions on land use is a question of law.
In 1938, the subject premises fell within a Nonconforming Industrial District. (See ROR #11w, 1938 Map.) Section 8(a) of the 1938 Regulations permitted "[a]ny use permitted in a residential or business district. . ." (ROR #11L, p. 8.) The regulations were silent as to any seasonal restrictions. Although the lots were less than an acre in size (ROR #11x, #11y, #11z, #11aa, and #11bb, Plan Maps of the Pinewood Lake area), their residential use was always permitted.
By 1953 the area was designated as "Zone A Residential." (ROR #11v, 1953 map.) The zone remains the same up to the present time. (ROR #11u.) The Zone A Residential classification required a minimum lot size of one-half acre, at least from 1953 to the present. (See ROR #11m, p. 25; #11n, p. 41; #19, p. 41, Minimum Lot and House Sizes.) Although the cabins may not have conformed, there was no question in the regulations as to their residential purpose.
The 1959 and current editions of the Trumbull Zoning Regulations appear to include some restriction on enlargement of a seasonal use. Section 4-J of Article I states:
 The use or occupancy of a non-conforming building or structure, used or occupied during a particular season only, or for part of a year only, at times or periods other than said particular season or part of a year is an enlargement of and/or increase to the use or occupancy of the non-conforming building or structure.
Nevertheless, the record is devoid of any statute or regulation designating the subject area, either directly or implicitly by the imposition of an applicable standard, a seasonally-restricted zone. The ZBA merely considered anecdotal evidence (See ROR #11, pp. 15-35; #11o, #11p, #11q, and #11t; and #11jj), as well as the Pinewood Lake Association Bylaws. (ROR #11KK.) Neither the anecdotal evidence nor the bylaws indicate any legal restriction or extraseasonal use. Indeed, the definition of "summer months" was supplied by the Trumbull Town Attorney (ROR #11, p. 19), not by reference to any cognizable legal standard.
Absent any legal definition of "seasonal use," Article I, CT Page 8152 4-J provides no legal standard for determining what constitutes such a use. There is no regulation designating the plaintiff property as being in a zone restricted to seasonal use.
The court in Petruzzi implied that the restriction on expanding nonconformities pertains only to the nonconformity itself.
 In determining whether to issue the building permit, the building official was required to decide whether the proposed use was in conformity with the applicable regulations. In this case, since the proposed use was a permitted use, the only issue before the building official was whether the lot and building met the requirements of the zoning regulations.
Petruzzi, 176 Conn. at 482. In the instant case, the plaintiff does not seek to alter, change or renovate the premises, which are admittedly nonconforming. Rather, she seeks to use the premises in a way specifically ordained by the town zoning regulations.
"A permitted use is not a nonconforming use. A nonconforming use is merely an `existing use' rendered illegal by a change in the regulation. The continuance of which is authorized by the zoning regulations." Melody v. ZBA, 158 Conn. 516,519 (1969). In Adolphson v. ZBA, 205 Conn. at 710. The court stated:
 A property owner may legally engage in a prohibited use under either of two dispensations. He may obtain a variance, or his use may qualify as a nonconformity." T. Tondro, supra, III-E(4), p. 70. A nonconformity is a use or structure prohibited by the zoning regulations but is permitted because of its existence at the time that the regulations are adopted. Id. On the other hand, a variance is a prohibited use or structure that is permitted by the board, pursuant to its authority under the regulations. Id. The variance power exists to permit what is prohibited in a particular zone.
The present case does not fit the definition articulated in Adolphson because the regulations permit and encourage residential use. (See ROR #11L, #11m, #11n, and #19.) Thus, the plaintiff merely seeks to exercise a use consistent with the CT Page 8153 zone, not enlarge or expand the nonconformity.
The recognized goals of zoning support the plaintiff's position. The court has recognized, often and without equivocation, "that `nonconforming uses should be abolished or reduced to conformity as quickly as the fair interest of the parties will permit — [i]n no case should they be allowed to increase.'" Adolphson, 205 Conn. at 710; also Beerwort,144 Conn. at 733; Stern v. ZBA, 140 Conn. 241, 244 (1953); Salerni v. Scheuy, 140 Conn. 566, 570 (1954); Lathrop v. Norwich,111 Conn. 616, 622 (1930).
This stated goal would not be served if the ZBA were to prevail in the present case, because the area in question is and was expressly zoned for residential purposes. Phasing out a residential use in a residential zone would be antithetical to the purpose and goal of zoning.
Weyls still has some vitality, but only to the extent that it prohibits the extension of a nonconforming use. Because the present case involves the "enlargement" of a permitted use, i.e., unrestricted residential use in a residential zone, Petruzzi controls. (Although Weyls involved the same tract of land, that case was not laid out in the same manner as the present case, and the court did not reach the legal principle now being considered.)
The ZBA's position would indeed violate Conn. Gen. Stat.8-2. Therefore, the use sought is a permitted use and the court hereby sustains the plaintiff's appeal.
DEAN, JUDGE