CITY OF NEW LONDON ET AL. *v.* ZONING BOARD OF APPEALS OF THE TOWN OF WATERFORD
(10307)

DALY, LANDAU and HEIMAN, Js.

Argued September 21—decision released November 3, 1992

*Emmet L. Cosgrove,* with whom, on the brief, was *Barbara J. Claire,* for the appellant (defendant).

*Thomas J. Londregan,* with whom, on the brief, was *Myron B. Bell,* for the appellees (plaintiffs).

LANDAU, J. The defendant Waterford zoning board of appeals appeals from the judgment of the trial court sustaining the appeal of the plaintiffs, the city of New London and the New London police department (New London). The trial court concluded that the decision of the board limiting the term "municipal facilities," as used in the Waterford zoning regulations § 6.2.4,[1] to municipal facilities of the town of Waterford was illegal. On appeal to this court, the board claims that the trial court improperly substituted its judgment for that of the board by concluding that the term "municipal facility" means facilities of every municipality and not just facilities of the town of Waterford.

The following facts are pertinent to this appeal. The city of New London purchased a parcel of land in the town of Waterford in 1923. During the 1960s, the city established a police firearms training facility on the property. Since that time, the area surrounding the training facility has been developed and is designated a rural residential district (RU-120).

On December 18, 1978, the zoning regulations of the town of Waterford were adopted. On September 7, 1989, the Waterford zoning enforcement officer issued an abatement order, which stated that New London was to cease and desist in its use of the premises as a firearms training facility, and further stated that such use was not permitted in an RU-120 district without the approval of the Waterford planning and zoning commission.

---

[1] Section 6.2 of the Waterford zoning regulations provides in pertinent part: "USES PERMITTED IN THE RU-120 DISTRICT SUBJECT TO THE APPROVAL OF A SPECIAL PERMIT

"The following uses may be permitted in the RU-120 District, if approved by the Commission in accordance with the provisions of Section 23 of these regulations. . . .

"6.2.4 Municipal facilities including firehouses and parking lots serving firehouses."

New London appealed the abatement order to the board of appeals claiming that the firearms training facility was a "municipal facility," as defined in § 6.2.4 of the regulations, and, because the facility existed prior to the adoption of the regulations, it is a permitted use under § 3.32 of the regulations.[2] Alternatively, New London argued that the training facility is a nonconforming use that was not abandoned after the adoption of the regulations.

After public hearings, the board denied New London's request to reverse the abatement order. The board concluded that the training facility was not a municipal facility within the meaning of the regulations, and was therefore a nonconforming use, rather than a permitted use. The board further concluded that the site had been abandoned by the city. New London appealed the board's decision to the Superior Court, pursuant to General Statutes § 8-8.[3] The Superior Court sustained New London's appeal and reversed the board's decision.

The trial court determined that the word "municipal," as used in the phrase "municipal facility" in § 6.2.4 of the regulations, is to be interpreted according to its plain meaning, and therefore includes any municipal facility of any municipality, including a New London facility, and not just a town of Waterford municipal facility. The trial court concluded that the

---

[2] Section 3.32 of the Waterford zoning regulations provides: "EXISTING USES WHICH WOULD BE ALLOWED WITH THE APPROVAL OF A SPECIAL REMIT When the use of land or a building or structure existed prior to the adoption of these regulations which is only allowed hereafter upon approval of a special permit, such existing use shall be considered a permitted use, provided the provisions of Section 23.9 of these regulations shall apply to all proposed changes to such existing use."

[3] General Statutes § 8-8 (b) provides in relevant part: "[A]ny person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located. . . ."

municipal police training facility was a permitted use under the regulations.[4] We disagree.

General Statutes § 8-6 provides that the zoning board of appeals shall, inter alia, hear and decide appeals where it is alleged that there is an error in any order made by a zoning enforcement officer. The board is entrusted with the function of interpreting and applying its own zoning regulations. *Baron* v. *Planning & Zoning Commission,* 22 Conn. App. 255, 257, 576 A.2d 589 (1990). When deciding an appeal from a decision of the board, the trial court must determine whether the board has correctly interpreted its regulations and applied them with reasonable discretion to the facts. *Pascale* v. *Board of Zoning Appeals,* 150 Conn. 113, 117, 186 A.2d 377 (1962); *Baron* v. *Planning & Zoning Commission,* supra. The burden is on the plaintiffs to demonstrate that the board has acted improperly in making its decision. *Adolphson* v. *Zoning Board of Appeals,* 205 Conn. 703, 707, 535 A.2d 799 (1988). A decision of the board will be reversed only when the plaintiff has proven that the decision was unreasonable, arbitrary or illegal. *Schwartz* v. *Planning & Zoning Commission,* 208 Conn. 146, 152, 543 A.2d 1339 (1988). A local board or commission is in the most advantageous position to interpret its own regulations and apply them to the situations before it. Therefore, as long as honest judgment has been reasonably and fairly exercised at the local level, the trial court must not substitute its judgment for that of the zoning board. *Baron* v. *Planning*

---

[4] Because the trial court found that the training facility was a permitted municipal facility, it stated that it need not reach the nonconformity and abandonment issues. Although it made no specific finding, the trial court stated that "[u]nder the circumstances it would be difficult for this record to support a finding of nonuse, even though it is clear that 'local governments are authorized to fashion zoning regulations that terminate nonconforming uses after a specified period of nonuse without regard to intent.' *Essex Leasing, Inc.* v. *Zoning Board of Appeals,* 206 Conn. 595, 607, 539 A.2d 101 (1988)."

& *Zoning Commission,* supra, 257; *Molic* v. *Zoning Board of Appeals,* 18 Conn. App. 159, 164, 556 A.2d 1049 (1989).

The principles governing interpretation of zoning regulations are well settled. Promulgation of zoning regulations is a legislative process, although local in scope. *Park Regional Corporation* v. *Town Plan & Zoning Commission,* 144 Conn. 677, 682, 136 A.2d 785 (1957). When this court interprets a local legislative enactment, it looks for the expressed intent of the legislative body in the language it used to manifest that intent. If it is clear and unambiguous on its face, we will look no further. *Planning & Zoning Commission* v. *Gilbert,* 208 Conn. 696, 705, 546 A.2d 823 (1988). Furthermore, we will construe the language of zoning regulations so that no clause is deemed superfluous, void or insignificant. *Essex Leasing, Inc.* v. *Zoning Board of Appeals,* 206 Conn. 595, 601, 539 A.2d 101 (1988). The regulations must, however, be interpreted so as to reconcile their various provisions and make them operative as far as possible. *Donohue* v. *Zoning Board of Appeals,* 155 Conn. 550, 557, 235 A.2d 643 (1967). When we encounter a situation in which more than one construction is possible, we will adopt the construction that renders the enactment effective and workable and reject any that might lead to unreasonable or bizarre results. *Maciejewski* v. *West Hartford,* 194 Conn. 139, 151–52, 480 A.2d 519 (1984).

There is no legislative definition of the term "municipal" in the Waterford zoning regulations. Therefore, we must examine the regulations as a whole to determine its meaning. *Essex Leasing, Inc.* v. *Zoning Board of Appeals,* supra, 601. Section 3.17 of the regulations, entitled "Municipal Water and Sewer Facilities," provides that "the Planning and Zoning Commission may grant a Special Permit to the Town for the construction in any district of facilities such as pump stations,

treatment and/or control installations and the like, reasonably necessary to provide for adequate water supply, sewerage, and drainage systems. . . . " New London argues that because this section uses "Town" to denote the town of Waterford, the term "municipal facilities" in § 6.2.4 must mean a facility in addition to the town of Waterford. We disagree.

When construing a zoning regulation, our primary goal is to ascertain and give effect to the intent of the local legislative body as expressed in the regulation as a whole. It is neither our purpose nor our intention, however, to engage in a microscopic examination of these regulations in an attempt to uncover technical infirmities and render the regulations ineffective. See id.; *Silver Lane Pickle Co.* v. *Zoning Board of Appeals,* 143 Conn. 316, 319, 122 A.2d 218 (1956). When we interpret the Waterford regulations in their entirety, it is clear that the intent of the town of Waterford was to permit the placement of municipal facilities owned and operated by Waterford in only certain districts. New London's water filtration plant, for instance, located in Waterford, was approved as a public utility building under § 6.2.3 of the regulations, as opposed to a municipal facility under § 6.2.4. Furthermore, New London's water supply well, also located in Waterford, was approved as a public utility, not a municipal facility. The creation of the public use category clearly anticipated and made provisions for existing New London utilities and for future improvements of these facilities.

It is clear that the town of Waterford, in its discretion, can determine the categories used in its zoning regulations. We must invest broad discretion in local zoning authorities when determining the public need and the manner in which it is met, because they are closest to the circumstances and conditions that create the problem and shape the solution. *Frito-Lay, Inc.*

v. *Planning & Zoning Commission,* 206 Conn. 554, 573, 538 A.2d 1039 (1988); *Stiles* v. *Town Council,* 159 Conn. 212, 219, 268 A.2d 395 (1970).

A finding that any facility owned by any town, city or borough in this state and beyond would constitute a municipal facility in its broadest sense could lead to bizarre and unintended results. Under such a construction, it is possible that a town that owned land in another town could build, for instance, a waste treatment facility in that other town and would be exempt from that locality's zoning regulations simply because it is a facility owned by a municipality. We cannot countenance such a construction.[5]

The trial court determined that because the training facility was a municipal facility, it need not consider the nonconforming use and abandonment issues. Yet in its memorandum of decision, the trial court stated that "[u]nder the circumstances it would be difficult for this record to support a finding of nonuse . . . ." Although the trial court, technically, made no explicit finding, such a conclusion is implicit in the court's memorandum of decision, and is supported by testimony before the board and throughout the record. See *Rene Dry Wall Co.* v. *Strawberry Hill Associates,* 182 Conn. 568, 575, 438 A.2d 774 (1980). While there was no explicit finding that this was a nonconforming use that had not been abandoned, the language of the memorandum of decision, fairly and reasonably construed, points to just such a conclusion. See *Connecticut Coke Co.* v. *New Haven,* 169 Conn. 663, 673 n.5, 364 A.2d 178 (1975); *King* v. *New Haven Trap Rock Co.,* 146 Conn. 482, 484, 152 A.2d 503 (1959).

---

[5] Our interpretation of municipal is further supported by its plain and ordinary meaning. "Municipal" is defined as "restricted to one locality: having narrow limits." Webster, Third New International Dictionary.

While we do not agree with the trial court's analysis, we do agree with New London's alternative argument that the training facility is a nonconforming use that has not been abandoned. Therefore, the trial court's decision is correct, but not for the reason stated. "This court is not required to reverse a ruling of the trial court which reached a correct result, albeit for a wrong reason." *Herrmann* v. *Summer Plaza Corporation,* 201 Conn. 263, 274, 513 A.2d 1211 (1986); *State* v. *Lamme,* 19 Conn. App. 594, 604, 563 A.2d 1372 (1989), aff'd, 216 Conn. 172, 579 A.2d 484 (1990).

The judgment is affirmed.

In this opinion the other judges concurred.

