[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Daniel and Lynn Purus, appeal from a decision of the Bethel Zoning Board of Appeals (the "Board") in which the Board voted to grant an "appeal for correction of alleged error" by the Zoning Enforcement Officer with respect to his granting a building permit to Lynn and Daniel Purus for a horse barn to be used for three horses. The plaintiffs appeal pursuant to General Statutes § 8-8.
The plaintiffs had been issued a building permit, dated May 14, 1996, to construct a horse barn for three horses on their 2.27-acre parcel of property.[1] Subsequently, a petition "To appeal for Correction of Alleged Error in decision of the Zoning Officer," dated May 30 1996, was submitted to the Board. A public hearing was conducted on June 18, 1996. The Board ultimately concluded, in effect, that Zoning Regulation § 118-24A(5) of the Town Code of Bethel requires three acres in order to keep horses; therefore, the Zoning Enforcement Officer erred in granting a building permit to the plaintiffs.
The plaintiffs appeal this decision on the ground that the board acted arbitrarily, illegally, and in abuse of its discretion in interpreting the Bethel zoning regulation at issue in such a manner.
General Statutes § 8-8 governs appeals taken from the decisions of a zoning board of appeals to the Superior Court. In order to take advantage of a statutory right of appeal, parties must comply strictly with the statutory provisions that create such a right. Bridgeport Bowl-O-Rama, Inc. v. Zoning Board ofAppeals, 195 Conn. 276, 283, 487 A.2d 559 (1985).[2]
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal." Jolly, Inc. v. Bridgeport Zoning Board ofCT Page 11950Appeals, 237 Conn. 184, 192, 676 A.2d 831 (1996). In the present appeal, the plaintiffs allege that they "are aggrieved by the decision of the board because the decision wrongfully deprives plaintiffs of the enjoyment and use of the Subject Property as was originally and specifically anticipated at the time of purchase. The decision by the Zoning Board of Appeals frustrates the very purpose for which the property was acquired and subjects plaintiffs to substantial economic loss."
The plaintiffs, as the owners of the property in question, are aggrieved by the decision of the Board. Winchester WoodsAssociates v. Planning Zoning Commission, 219 Conn. 303, 308,592 A.2d 953 (1991); Bossert Corporation v. Norwalk,157 Conn. 279, 285, 253 A.2d 39 (1968). See also Plaintiffs' Exhibits A and B: Plaintiff's Warranty Deed.
General Statutes § 8-8 (b) provides, in pertinent part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes . . . ." Subsection (e) provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
Notice of the decision by the Board was published in The Bethel Beacon on June 28, 1996; and on July 12, 1996, this appeal was commenced by service of process on the town clerk of Bethel and upon the chairman of the Board. Therefore, service was properly made within the fifteen-day statutory time limit.
"[T]he zoning board of appeals shall . . . hear and decide appeals where it is alleged that there is an error in any order made by a zoning enforcement officer." New London v. Zoning Boardof Appeals, 29 Conn. App. 402, 405, 615 A.2d 1054 (1992). When the Board determines the reasonableness of a decision of a zoning enforcement officer, it acts administratively in a quasi-judicial capacity in applying the regulations. Lawrence v. Zoning Board ofAppeals, 158 Conn. 509, 513-14, 264 A.2d 552 (1969). "[T]he action of the zoning enforcement officer that is the subject of the appeal is entitled to no special deference by the court."Caserta v. Zoning Board of Appeals, 226 Conn. 80, 87,626 A.2d 744 (1993). Id., 89. The Board "hears and decides such an `appeal' de novo." Id., 88-89. CT Page 11951
The Board is entrusted with "the function of interpreting and applying its zoning regulations." Baron v. Planning ZoningCommission, 22 Conn. App. 255, 257, 576 A.2d 589 (1990). "Where a zoning agency has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulation." (Internal quotation marks omitted.)Caserta v. Zoning Board of Appeals, supra, 226 Conn. 86-87. "Under this traditional and long-standing scope of review, the proper focus of a reviewing court is on the decision of the zoning agency and, with regard to its factual determinations, on the evidence before it that supports, rather than contradicts, its decision." Id., 87.
The trial court reviews the Board's decision "only to determine whether it was unreasonable, arbitrary or illegal."Schwartz v. Planning Zoning Commission, 208 Conn. 146, 152,543 A.2d 1339 (1988). The plaintiff bears the burden of demonstrating that the commission acted improperly. Adolphson v. Zoning Boardof Appeals, 205 Conn. 703, 707, 535 A.2d 799 (1988). "A local board or commission is in the most advantageous position to interpret its own regulations and apply them to the situations before it." New London v. Zoning Board of Appeals, supra,29 Conn. App. 405. "Therefore, as long as honest judgment has been reasonably and fairly exercised at the local level, the trial court must not substitute its judgment for that of the zoning board." Id.
At the Board's meeting on June 18, 1996, the Board voted "to grant the appeal for correction of alleged error in the granting of [the building] permit" with regard to the permit granted by the Zoning Enforcement Officer to the plaintiffs for a horse barn to be used for three horses. In revoking the building permit that had been issued to the plaintiffs, the Board relied upon Zoning Regulation § 118-24A(5). The regulation provides in pertinent part:
"A. Permitted uses. No land shall be used or occupied and no structure shall be designed, erected, altered, used or occupied except for only one (1) of the following permitted uses; provided, however, that a permitted use may be accompanied by lawful accessory uses: CT Page 11952
"(5) Farming, dairy, truck or nursery gardening, provided that no livestock, except household pets, shall be kept on any lot of less than three (3) acres . . . . Horses and ponies for family use may be kept only on parcels of land forty thousand (40,000) square feet or more, but not more than two (2) of the same per forty thousand (40,000) square feet . . . ."
At the beginning of the public hearing, a portion of a letter written by the Zoning Enforcement Officer was read into the record. The letter stated, in part, "the zoning department has consistently interpreted the section as permitting two horses per forty thousand square feet for family use." (Internal quotation marks omitted.) (ROR, Exhibit B: Tr., pp. 17, 48). A member of the public also spoke and reported that he currently had a horse on less than two acres. Commissioner Pitt, however, later emphasized that "the only reasonable way we can make sense out of this knowing that other people have been allowed to have horses on less than three acres, this is the first time that it has been brought before the Zoning Board of Appeals. . . ." (ROR, Exhibit B: Tr., p. 74).
The record further reveals that during the public hearing there was discussion concerning the definition of the term "livestock." At the hearing, Martin Lawlor, attorney for the individual defendants, stated that the term "livestock" is generally considered to include horses.[3] Therefore, Lawlor maintained that Bethel landowners may not keep horses on a lot that is less than three acres in size.
The meaning of the term "parcel" was also discussed at the hearing. Attorney Lawlor asserted that the term "parcel" is commonly defined as a part or piece of a larger acreage. Thus, according to Attorney Lawlor, the requirement of 40,000 square feet merely refers to a set-aside area within the three-acre lot. Lawlor emphasized that this interpretation was bolstered by the fact that Bethel's neighboring towns have similar set-aside provisions.
Susan Pena, one of the individual defendants, argued that if a landowner is allowed to keep two horses on a one-acre lot, the landowner would not be able to keep horse manure at least one hundred feet from the property line as is required by § 118-24A(5). Defendant Carlos Pena noted that, according to the Connecticut Cooperative Extension, a single horse produces ten tons of manure per year. He further stated that the CT Page 11953 two-horses-per-acre interpretation fails to take into account those areas where horses cannot be kept such as the house, the driveway, and the septic field.
Carlos Pena also contended that three acres of land are necessary to properly maintain horses in light of the nuisances and environmental hazards that horses create. He emphasized that horses emit offensive odors, attract flies and rodents, and pollute water and wetlands. Therefore, he concluded that a two-horses-per-acre interpretation would significantly reduce the property values of Bethel residents.
Pena also pointed out that, pursuant to § 118-24B(11), kennels require special permits, setbacks, and buffer zones. It is reasonable to conclude, Pena argued, that the more disruptive use of maintaining horses must be subject to the three-acre minimum. He also noted that § 118-24A provides that a lot may have only one permitted use which may be accompanied by lawful accessory uses. He further argued that this section prohibits horses from being kept on a lot that has a one-family dwelling because the maintenance of horses is not an accessory use.
Following the public input portion of the meeting, a recess was taken, the meeting was called back to order, and the commissioners discussed the matter further. One of the commissioners, Robert Pitt, stated that "the only consistent way that section 118-24 can be read is that . . . this town does require three acres in order to have horses on this property." (ROR, Exhibit B: Tr., p. 74.) Pitt also emphasized that "I think the only reasonable way we can make sense out of this knowing that other people have been allowed to have horses on less than three acres, this is the first time that it has been brought before the Zoning Board of Appeals but since it is in our lap I personally feel that we have to find that you do need three acres in order to have a horse. . . ." (ROR, Exhibit B: Tr., p. 74). Another commissioner, John Cleary, added that "I have to go with what logically rests with me. That to say forty thousand square feet to me is a dedicated piece of land within the larger set of acreage. And that larger set of acreage is stipulated as three acres. So that's my reasoning behind my belief. It's not too sophisticated, it simply says I've matched all the definitions in my mind with all the things that I see that makes sense." (ROR, Exhibit B: Tr., pp. 75-76.) After the discussion, a motion was made "to grant the appeal for correction of alleged error in the granting of this permit . . . and that the only consistent way CT Page 11954 Section 118-24 can be read is that this town does require three acres in order to have horses." (ROR, Exhibit C). This motion passed unanimously.
In view of the foregoing, the Board could have reasonably concluded that the zoning enforcement officer acted improperly. "General Statutes § 8-6 entrusts the commission with the function of interpreting and applying its zoning regulations."Baron v. Planning Zoning Commission, supra, 22 Conn. App. 257, citing Toffolon v. Zoning Board of Appeals, 155 Conn. 558, 560,236 A.2d 96 (1967). "The regulations, must, however, be interpreted so as to reconcile their various provisions and make them operative as far as possible." New London v. Zoning Board ofAppeals, supra, 29 Conn. App. 406, citing Donohue v. Zoning Boardof Appeals, 155 Conn. 550, 557, 235 A.2d 643 (1967). The court finds that the Board's interpretation of § 118-24A(5) does reconcile the various zoning provisions, and that the Board's decision should not be disturbed because the Board's "honest judgment has been reasonably and fairly exercised." Baron v.Planning Zoning Commission, supra, 257.
For the foregoing reasons the plaintiffs' appeal is dismissed.
STODOLINK, JUDGE