[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I. Facts
On June 24, 1998, the plaintiff, Stanley L. Babbitt, brought this appeal against the defendants, the Cromwell Zoning Board of Appeals (the board), Carol J. Messer and Sheri DiVicino. The appeal challenges the board's decision to reverse a cease and desist order issued by a development compliance officer ordering Messer and DiVicino to remove a horse from the property located at 8 Greendale Avenue, Cromwell, Connecticut (the property).
The return of record reveals the following facts. At all times pertinent to this appeal, Messer was the owner of the property and DiVicino resided at the property. (Return of Record [ROR], Item 3). DiVicino continuously maintained two horses on the property since July 17, 1996. (ROR, Items 4a; 6).
On August 19, 1997, Cromwell Code § 11.10 became effective. (ROR, 4a). This section establishes a minimum requirement of three acres of land in order to keep one "large domestic animal pet" and one half acre for each additional large animal pet. (ROR, Item 22c). Prior to that time, Cromwell Code § 82-7 regulated the amount of land necessary for the maintenance of a large animal pet. (ROR, Item 4b). Section 82-7 provides that "a large animal pet may be kept . . . [on] a contiguous area behind the building line . . . equivalent to ten (10) times the standard adult weight of the animal (as set forth in breed standards) expressed in square feet," excluding land within ten feet of common property lines and areas containing leaching fields. Under this section, additional large animal pets require an additional fifty percent of that area per animal. (ROR, Item 4b).[1]
On March 6, 1998, the development compliance officer, Fred CT Page 3491 Curtain, issued a cease and desist order upon DiVicino and Messer ordering the removal of one horse from the property. (ROR, Item 4a). The cease and desist order stated that "[t]he amount of land . . . on your property for the use of grazing large animal pets is approximately 13,500 square feet, by using the previous Chapter 82 calculations." (ROR, Item 4a). It further stated that "[t]he amount of useable grazing land . . . is for one (1) horse and only one horse, since this is what you were grandfathered for." (ROR, Item 4a).
Curtain calculated the amount of square feet necessary for one horse using a book he obtained from the local library entitled "The Horseman's Bible," which gives the weights of different breeds of horses. (ROR, Items 5; 25, p. 10). Based on the weights of several different breeds of horses in the book, Curtain estimated that the weight of the first horse on the property was 1,000 pounds and then added fifty percent of that weight for a total of 1,500 pounds. (ROR, Item 25, pp. 10-11). This weight. thereby required 15,000 square feet of land for the maintenance of two horses on the property under § 82-7. Curtain did not use the actual breeds of the horses on the property, but based his decision on a "horse that could possibly be" on the property. (ROR, Item 25, p. 10).
On March 17, 1998, DiVicino filed an appeal from the cease and desist order to the board on the ground that her maintenance of two horses on the property constituted a prior nonconforming use under § 82-7. (ROR, Item 3). DiVicino argued that based on the estimated weight of her largest horse by a veterinarian, which was 900 pounds, the amount of land required for two horses under § 82-7 was 13,500 square feet, which was the amount of land Curtain found available for one horse under § 82-7. (ROR, Item 6).
After duly published notice, the board held a public hearing regarding DiVicino's appeal on April 2, 1998. (ROR, Items 2; 25). The board held further hearings on the matter on May 5, 1998 and June 2, 1998, respectively, and on June 2, 1998, voted to sustain DiVicino's appeal. (ROR, Items 23; 24).
Babbitt, an abutting landowner of the property, seeks, inter alia, a reversal of the board's decision upholding DiVicino's appeal of the cease and desist order on the ground that the board acted illegally, arbitrarily and in abuse of its discretion in overturning it. CT Page 3492
II. Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiffs appeal." Jolly, Inc. v. Zoning Board of Appeals,237 Conn. 184, 192, 676 A.2d 831 (1996). Section 8-8 (b) of the General Statutes provides, in pertinent part, that "any person aggrieved by any decision of a [zoning] board may take an appeal to the superior court . . ." Section 8-8 (a)(1) of the General Statutes provides that an aggrieved person, for purposes of §8-8, "includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board."
Babbitt is the owner of the property located at 9 Laurel Drive, Cromwell, Connecticut, which abuts the property located at 8 Greendale Avenue, Connecticut. Accordingly, Babbitt is statutorily aggrieved.
III. Timeliness
An appeal of a zoning board of appeal's decision must "be commenced by service of process . . . within fifteen days from the date that notice of the decision was published. . . ." General Statutes § 8-8 (b). The return of record reveals that the board published notice of its decision in the Hartford Count on June 5, 1998. (ROR, Item 1). On June 19, 1998, Peter Doolittle, Chairman of the Town of Cromwell Zoning Board of Appeals, and Darlene DiProto, Town Clerk of Cromwell, were served. Messer and DiVicino were additionally served on June 19, 1998. Accordingly, the appeal is timely.
IV. Scope of Review
On review of a decision of a zoning board of appeals, the Superior Court "may reverse or affirm, wholly or partly, or may modify or revise the decision appealed from." General Statutes § 8-8 (1). "[F]ollowing an appeal from the action of a zoning enforcement officer to a zoning board of appeals, a court reviewing the decision of the zoning board of appeals must focus, not on the decision of the zoning enforcement officer, but on the decision of the board and the record before the board." Casertav. Zoning Board of Appeals, 226 Conn. 80, 82, 626 A.2d 744
(1993). CT Page 3493
Where a board fails to give the reasons for its decision or the reasons are insufficient to support the decision, the court must search the record to determine whether it contains substantial evidence from which the ultimate finding could be inferred. SeeGrillo v. Zoning Board of Appeals, 206 Conn. 362, 369,537 A.2d 1030 (1988); Connecticut Building Wrecking Co., Inc. v.Carothers, 218 Conn. 580, 601, 590 A.2d 447 (1991). "Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised. . . ." (Citation omitted; internal quotation marks omitted.) Bloom v.Zoning Board of Appeals, 233 Conn. 198, 206, 658 A.2d 559 (1995). The plaintiff has the burden of demonstrating that the board acted improperly. See id. The court is limited to determining whether the board's act was "arbitrary, illegal or an abuse of discretion." Id., 205-06.
V. Discussion
A. Site inspection
Babbitt argues that the board acted illegally, arbitrarily and in abuse of its discretion in overturning the cease and desist order because the board's determination that the property complied with § 82-7 was based on an inspection of the property by a board member, Dave Beauchemin.[2] Babbitt further contends that Beauchemin's statement, at the June 2, 1998 meeting of the board, that the property complied with § 82-7, was an evidentiary matter made after the public hearing was closed, thereby depriving him of the opportunity to refute Beauchemin's conclusion and present evidence at a duly noticed public hearing.
"[P]roceedings before an administrative board are informal and the board is not bound by strict rules of evidence and may act upon facts which are known to it, even though they are not produced at the hearing." (Citation omitted; internal quotation marks omitted.) Grimes v. Conservation Comm. of the Town ofLitchfield, 243 Conn. 266, 276, 703 A.2d 101 (1997). "The principal procedural limitations on the hearing are that there must be due notice of the hearing, and at the hearing no one may be deprived of the right to produce relevant evidence or to cross-examine witnesses produced by his adversary or to be fairly apprised of the facts upon which the board is asked to act." (Citation omitted; internal quotation marks omitted.) Conetta v.CT Page 3494Zoning Board of Appeals, 42 Conn. App. 133, 137, 677 A.2d 987
(1996).
Administrative agency members "are permitted to base their decisions in part on facts within their peculiar knowledge, including information gleaned from a site inspection. . . . A site visit is therefore an appropriate investigative tool . . ." (Citations omitted; internal quotation marks omitted.) Id., 277. The failure of an administrative agency to give notice of a site inspection to an interested party does not violate administrative fundamental fairness. See id., 281. "[A] rule requiring [an administrative agency] to give personal notice of site inspections to interested persons when one of the parties is in attendance would be unnecessarily burdensome." Id.
Based on the foregoing, Beauchemin's inspection of the property was a proper method for determining whether it complied with § 82-7. Moreover, the board published notice of the public hearing scheduled for April 2, 1998 and the record reveals that Babbitt, as well as his son, attended this public hearing. (ROR, Item 25). At the April 2, 1998 public hearing, Babbitt and his son argued against the reversal of the cease and desist order and submitted documentation in support of their position. (ROR, Items 7; 8; 9; 25). Additionally, the public hearing was continued from April 2, 1998 to the May 5, 1998 meeting of the board. (ROR, Items 23; 25, p. 17). The return of record indicates that Babbitt did not attend the May 5, 1998 meeting where the board voted to close the public hearing. (ROR, Items 19; 23). Accordingly, the court finds that Babbitt was afforded ample opportunity to present evidence in support of his position and that the hearing complied with the applicable procedural limitations.[3]
B. Lawful prior nonconforming use
Babbitt argues that DiVicino's use of the property is not a lawful prior nonconforming use under § 82-7 because: (1) she did not present evidence to the board that she complied with § 82-7 using the weight standard set forth in the regulation; and (2) the land she claims available for the maintenance of her two horses violates the regulation.
Under General Statutes § 8-2, a zoning authority may not prohibit the continuance of a nonconforming use which existed at the time of the adoption of a new regulation. A nonconforming use is a "use or structure prohibited by the zoning regulations CT Page 3495 but . . . permitted because of its existence at the time that the regulations [were] adopted." Adolphson v. Zoning Board ofAppeals, 205 Conn. 703, 710, 535 A.2d 799 (1988). "For a use to be considered nonconforming . . . that use must possess two characteristics. First, it must be lawful and second, it must be in existence at the time that the zoning regulation making the use nonconforming was enacted. . . ." (Citation omitted; internal quotation marks omitted.) Cummings v. Tripp, 204 Conn. 67, 91-92,527 A.2d 230 (1987).
1. Section 82-7 weight standard
Babbitt argues that the board's decision was illegal, arbitrary and capricious because DiVicino did not demonstrate that she was in compliance with § 82-7 using the standard of measurement provided for in the regulation. Section 82-7 provides that the standard weight of a large animal pet, for purposes of determining the requisite minimum square feet available for the maintenance of a large animal pet, is to be determined as set forth in breed standards.
DiVicino presented evidence to the board that she complied with § 82-7 based on the actual weight of her horses estimated by a veterinarian using weight tapes. (ROR, Item 6). The veterinarian determined that the larger horse did not exceed 900 pounds and that the smaller horse did not exceed 750 pounds. (ROR, Item 6). Thus, DiVicino argued that using the weight of the largest horse under the formula provided in § 82-7, the greatest amount of land required was 13,500 square feet. As the board found that DiVicino's property was a prior nonconforming use under § 82-7, it implicitly approved the use of the veterinarian's estimated weights for purposes of § 82-7.
"Regulations . . . are construed in accordance with accepted rules of statutory construction." Caron v. Inland Wetlands Watercourses Commission, 25 Conn. App. 61, 65-66, 592 A.2d 964
(1991), aff'd, 222 Conn. 269, 610 A.2d 584 (1992). In construing a statute, the court's "initial guide is the language of the statute itself . . . Furthermore, [the court interprets] statutory language in light of the purpose and policy behind the enactment. . . . In construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended. . . ." (Citations omitted; internal quotation marks omitted.) Willow Springs Condominium Association, Inc. v. SeventhBRT Development Corp. , 245 Conn. 1, 26, 717 A.2d 77 (1998). CT Page 3496
"Although the construction and interpretation of a statute is a question of law for the courts to decide . . . it is well established practice [for the] court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . ." (Citations omitted; internal quotation marks omitted.) Starr v. Commissioner of Environmental Protection,226 Conn. 358, 372, 627 A.2d 1296 (1993). "A local board is in the most advantageous position to interpret its own regulations and apply them to the situations before it." New London v. ZoningBoard of Appeals, 29 Conn. App. 402, 405, 615 A.2d 1054, cert. denied, 224 Conn. 922, 618 A.2d 528 (1992). "The practical construction placed over the years upon ambiguous language . . . by those charged with its administration becomes weighty evidence of what the law is." Clark v. Town Council, 145 Conn. 476, 485,144 A.2d 327 (1958).
Section 82-7 does not define the term "breed standards," nor does it reference any authority from which breed standards can be determined for purposes of § 82-7. The regulation does not cite to "The Horseman's Bible" and the regulation had never before been interpreted based on this book. Indeed, there was information presented to the board that the regulation had previously been applied using actual weights. (ROR, Items 6; 25, p. 13).
In interpreting § 82-7, Curtain failed to determine the breed of the horses on the property. (ROR, Item 25, p. 12). He arbitrarily selected various breeds and estimated the weight for a horse that could possibly be on the property and then computed the square foot requirement under § 82-7. (ROR, Item 25, pp. 10-12). Further, there is no evidence that Curtain informed DiVicino of the standard that he used in making his calculation.
In light of the ambiguity of the definition of "breed standard," the board's determination that the property complied with § 82-7 based on a veterinarian's estimation of the actual weights of the horses is reasonable. Accordingly, the court cannot find that the board's reversal of the cease and desist order was illegal, arbitrary or an abuse of its discretion.
2. Land claimed available for the maintenance of two horses
Babbitt argues that DiVicino's property is not a lawful prior CT Page 3497 nonconforming use under § 82-7 because the portion of DiVicino's land that she claims is available for two horses is in violation of § 82-7, and therefore, that the board's decision is not supported by the record. Specifically, Babbitt argues that: (1) a plot plan submitted to the board showed that leaching fields exist in the area claimed by DiVicino as available for the two horses and; (2) that the land claimed available for the horses violates the fence line buffer requirement. (ROR, Items 7b; 14).[4]
Part of the space designated as a leaching area on the plot plan submitted by Babbitt, dated 1973, actually states "area reserved for future leaching fields." (ROR, Item 7b). Moreover, Curtain determined that DiVicino had 13,500 square feet available for a large animal pet excluding the front yard, leaching fields and side encumbrances. (ROR, Item 25, pp. 10-12). Furthermore, Beauchemin also found that the land available for the horses complied with § 82-7.
A trial court has "no authority to weigh the evidence and determine the issues of fact involved." Horn v. Zoning Board ofAppeals, 18 Conn. App. 674, 677, 559 A.2d 1174 (1989). "[T]he proper focus of a reviewing court is on the decision of the zoning agency and, with regard to its factual determinations, on the evidence before it that supports, rather than contradicts, its decision." Caserta v. Zoning Board of Appeals, supra,226 Conn. 87. The court finds that substantial evidence supports the board's decision that DiVicino's use of the property complies with § 82-7. Accordingly, the court cannot find that the board's decision was arbitrary, illegal or an abuse of its discretion.
VI. Conclusion
For the reasons herein stated, the decision of the board is affirmed and Babbitt's appeal is dismissed.
It is so ordered.
By the court
Rogers, J.